LELA QUAINTANCE, Appellant, v. MAHASKA COUNTY STATE BANK, Appellee.

**CONTRACTS: Implied Agreements—Inducing Third Party to Perform 1 One's Covenants.** An owner of mortgaged premises who leases the same and agrees with the lessee to erect certain improvements on the land, and who pledges the lease with the mortgagee as additional collateral security for the mortgage debt, and who, in the foreclosure of the mortgage, fully acquiesces in and approves and ratifies an application by the receiver for authority to borrow money and therewith to make the improvements which the lessor had obligated himself to make, thereby impliedly empowers the mortgagee, who advanced the funds with which to make the improvements, to reimburse himself out of the rentals accruing under the lease and collected prior to the expiration of the period for redemption from the mortgage sale. Under such state of facts, it is quite immaterial that the mortgagee bought in the property at foreclosure sale for the full amount of the mortgage debt.

**ASSIGNMENTS: Liabilities—Equities Between Original Parties. Principle 2 recognized** that an assignee of a landlord's right to demand an accounting for rents simply stands in the shoes of the assignor.

Headnote 1: 36 C. J. p. 194 (Anno.)    Headnote 2: 5 C. J. p. 961.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

NOVEMBER 17, 1925.

REHEARING DENIED FEBRUARY 19, 1926.

ACTION at law to recover from the defendant certain rents

collected by the defendant upon real property owned by the plaintiff's assignor. The defense was, in substance, that the rents collected by the defendant were legitimately appropriated to the discharge of the obligations of plaintiff's assignor to the defendant. There was a trial by the court without a jury, and a judgment dismissing the petition. The plaintiff appeals.— *Affirmed.*

*John E. Lake,* for appellant.

*J. G. Patterson* and *McCoy & McCoy,* for appellee.

EVANS, J.—The plaintiff is the assignee of her father, O. E. Quaintance, who was the owner of the real estate on which the rents sued for have accrued. The defendant, on January 19,

1. CONTRACTS: implied agreements: inducing third party to perform one's covenants.

1922, became the owner of certain notes by assignment from the Oskaloosa Savings Bank, said notes being the obligations of O. E. Quaintance, the assignor of plaintiff. These notes were for $15,500 and $16,200 respectively. The first was secured by a mortgage on, and the second by a warranty deed of, a certain garage property in the city of Oskaloosa. Intervening between the first mortgage and the warranty deed were other incumbrances which were later acquired or paid off by the defendant. At the time the property was conveyed by deed, it was subject to the mortgage of $15,500, and was subject to a lease entered into by Quaintance with Lamberson & Hunt in June, 1920, for a term of years. On January 16, 1922, Quaintance executed and delivered to the Oskaloosa Savings Bank a formal assignment of the existing lease. This assignment purported to be collateral security to the savings bank for all the obligations of Quaintance to it, either present or future. Not only did the transfer of the note by the savings bank carry its security to the defendant-bank as a matter of law, but the lease itself was transferred by such bank to the defendant-bank with such note. Beginning in April, 1922, the defendant-bank collected the rents accruing on the mortgaged property at the rate of $250 per month. The two notes became due in 1922, and Quaintance defaulted thereon. Foreclosure was begun for the October, 1922, term, and this went to decree in December, 1922.

The lease held by Lamberson & Hunt had a provision therein whereby certain extensive improvements were to be made on the property by lessor on or before May 1, 1923, which improvements were to be compensated for by an increase of rental rate. The defendant, as the then holder of the lease, was presumptively charged with notice of the obligations of the lease, and its rights were subject thereto. Beman, an officer of the defendant-bank, having been appointed receiver in the foreclosure suit, made application to the court for authority to perform the covenant of the lease and to borrow money therefor, if necessary. Such was the order of the court, Quaintance having due notice of the proceeding. Indeed, this proposal of the receiver's had the affirmative sanction of Quaintance. Contractors having been consulted by the bank and by the receiver, and these having furnished proposed specifications for the improvement, such proposed specifications were submitted to Quaintance, who fully ratified them. This ratification was in the form of a written supplemental contract entered into between Quaintance and the lessees, adopting such proposed improvements as a compliance with the lease, although they involved some modification of its terms. Pursuant to this order by the court and to this contract with Quaintance, Beman and the bank proceeded with the improvements. The contractors were employed, and the improvements were completed at a total cost of $6,800. No question is raised as to the reasonableness of this cost. In November, 1922, the rental rates were advanced to $375 per month, and in June, 1923, they were still further advanced to $426. On March 3, 1923, the property was sold under special execution in the foreclosure suit. It was bid in by the defendant for the full amount of its judgment, $34,500. The defendant nevertheless continued to collect the rent herein stated, up to the expiration of the year of redemption. The sum total thus collected up to March 3, 1924, amounted approximately to $8,600. This is the sum sued for. The claim therefor was assigned by Quaintance to the plaintiff in October, 1924. The claim of the plaintiff in the first instance was for the full amount of such rents, less $991 properly charged against the account. On this appeal the plaintiff concedes that $2,903 was properly charged against the account, and she now asks to recover the balance,

which is alleged to be $6,100. The general theory of recovery put forward by the plaintiff is, in brief:

(1) That the defendant's bid at the execution sale was a complete discharge of its judgment against Quaintance, and that it had no further claim upon any security.

(2) That the defendant had no right to apply these rents upon any other obligation of Quaintance's, because the lease had not been pledged as collateral to such other obligations; that the lease was assigned to the Oskaloosa Savings Bank, as collateral security for such obligations as Quaintance might be owing it; that such provision as to future obligation did not inure or apply to the defendant; that the defendant, therefore, could not apply such rents to the payment of obligations owed to it which were not acquired from the Oskaloosa Savings Bank.

In defense, the defendant-bank presents an itemized statement of obligations owed to it by Quaintance, amounting to about $18,000, and it contends that, after applying the collected rents to the discharge of the obligations of Quaintance to it, it will still be a loser to the amount of more than $9,000. It exhibits in defense notes signed by Quaintance to it for a total of more than $2,000. Some of the items claimed by it are not sustainable. This is true of an item of attorneys' fees and costs in the foreclosure suit; likewise the item of interest accruing upon the judgment pending the year of redemption. These items were necessarily discharged by the execution sale. But the principal and decisive item claimed is that of $6,800, the cost of the improvements. This item, with the $2,903 conceded by the plaintiff, absorbs the total of rents collected.

Turning first to the contentions of the plaintiff. Her first proposition above stated is self-evident, and we need spend no time upon it. The second proposition urged is predicated upon the assumption that plaintiff is in court asking a release of her collateral. This is not the situation. She is in court in an action at law, asking to recover a money judgment for money had and received from or on behalf of her assignor. She stands in the shoes of her assignor. If her assignor is entitled to credit for money owed to him by the defendant, such defendant is likewise entitled to counter credit and offset for such an amount as the

2. ASSIGNMENTS: liabilities: equities between original parties.

assignor is owing to it.  If Quaintance is justly under obliga-
tion to the defendant for the payment of any sum, we observe
no reason why such sum may not be offset against whatever
might otherwise be due from the defendant to Quaintance.
The principal question in the case is whether Quaintance was
properly chargeable with the reasonable cost of the improve-
ments which were made to fulfill his covenants under the lease.
If these improvements had been made over his protest, or if
they had been made without his knowledge and consent, there
might be a debatable legal question as to the extent of his lia-
bility, if any.  But in view of his express written ratification,
we see no room for doubt as to his liability.  He does not ap-
pear ever to have raised any question over the appropriation
of the rents to that purpose, until he made this assignment to
the plaintiff.  The plaintiff predicates some argument upon the
report of the receiver in the foreclosure proceedings.  The or-
der entered by the court authorized the receiver to make these
improvements and to borrow money therefor and to have the
costs charged as a lien upon the property.  In his final report,
the receiver reported that he had made the improvements and
had borrowed the money and had collected none of the rents.
That this was a rather unintelligent report is to be conceded.
What appears to have been done was that the bank and the re-
ceiver (being an officer of the bank) co-operated.  In paying
for the improvements, the receiver drew upon the bank, which
charged the drafts or checks to his loan account; whereas the
bank continued to collect the rents, as it had done previously,
and as it still had a right to do.  This informality of method
worked no injury to anyone, and was not disapproved by the
court.  No objection was made by Quaintance to the report of
the receiver or to the method disclosed therein.  It is suggested
in argument that these improvements only enhanced the value
of the property, the title to which the defendant ultimately ac-
quired; and that, therefore, the expenditure operated wholly
to the benefit of the defendant, and not to that of Quaintance.
The argument is plausible, on first impression, but is not sound.
These improvements were begun in the fall of 1922, and were
all completed while Quaintance was still the owner of the prop-
erty.  The enhancement, therefore, took place while he was the

owner, and he thereby got the benefit of it. He could have realized upon such benefit, either by redemption or by sale of his equity of redemption. It may be that the progress of the improvements and the prospect of the completion may have induced a larger bid by the defendant at the execution sale. If so, that was legitimate, and operated to the benefit of the judgment-debtor. The position of the defendant in that regard is no different than would have been the position of any other successful bidder, who had no interest in the judgment. If a third party had been the bidder, the fallacy of plaintiff's argument at this point would become very evident.

Disregarding, therefore, the question of what was the scope of the collateral security, and whether such collateral could be held for the obligations of Quaintance to the defendant-bank, we reach the conclusion that the defendant may offset the obligations of Quaintance to it against its obligations to Quaintance, and that it may properly apply the proceeds of its collections to any obligation in its hands legally chargeable to Quaintance.

There is some dispute between counsel as to whether there was an agreement in the district court for the trial of this case under equity rules. We give to appellant the benefit of the doubt, and have disregarded all points of technical advantage which the appellee might have had over the appellant in this court because of the findings of the lower court.

The judgment of the district court is affirmed.—*Affirmed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.