BRANTON v. O. B. CRITTENDEN & Co.*

(Division B. Jan. 17, 1927.   Suggestion of Error Overruled Jan. 31,

1927.)

[111 So. 150.   No. 26153.]

1. RELEASE. *Statute providing for compromise with one of several joint and several debtors is not repealed by Negotiable Instruments Law (Hemingway's Code, sections 2169, 2697.)*

   Section 2169 of Hemingway's Code (section 2682, Code of 1906), providing for compromise with one of several joint and several debtors, is not repealed by the Negotiable Instruments Law.

2. PLEADING. *Release. Statute providing how an instrument is discharged held not conflicting with statute as to release of one of several joint and several debtors; where one of two joint and several debtors has been released, obligation must be credited with half thereof; plea setting up offset because of release of one of two joint and several debtors is good as partial defense (Hemingway's Code, sections 2169, 2697).*

   Section 2697, Hemingway's Code, being section 119 of the Negotiable Instruments Law, providing how an instrument is discharged, is not in conflict with section 2169 of Hemingway's Code (section 2682, Code of 1906), and where one of two joint and several debtors has been compromised with and released from the obligation, the obligation must be credited with a *pro rata* share of the released debtor, which, in this case, is one-half of the obligation. A plea setting up an offset by reason of compromise and settlement, although not good as an entire defense, is good as a partial defense, and it is, therefore, error to sustain a demurrer thereto.

---

*Corpus Juris-Cyc. References: Pleading, 31Cyc, p. 697, n. 96; Release, 34Cyc, p. 1083, n. 86.

APPEAL from circuit court of Washington county.
HON. S. F. DAVIS, Judge.

Action by O. B. Crittenden, doing business as O. B. Crittenden & Co., against J. E Branton and another.

From a judgment for plaintiff, the first-named defendant appeals. Reversed and remanded.

*Wynn & Hafter,* for appellant.

The question to be determined is whether the release and discharge of one of the joint makers of a promissory note discharges the instrument and thereby releases the other joint maker from liability on the note. The solution of this question depends upon whether chapter 39, Hemingway's Code, Joint and Several Debtors, sections 2169-70, is repealed by the Negotiable Instrument Law, chapter 244, Laws of 1916.

It is our theory that the Joint and Several Debtor Statute is repealed by the Negotiable Instrument Law and thus the appellant is discharged and the demurrer of the appellee to special plea No. 2 should have been overruled.

Before this statute was passed in 1857, the common law and the law merchant prevailed in Mississippi and our decisions up to that time held that a joint maker of a promissory note was released and discharged where the creditor had released and discharged the other joint maker on the theory that a negotiable instrument was discharged by any other act which would discharge a simple contract for the payment of money. ' 34 Cyc., page 1081 and special note 79.

The Negotiable Instrument Law as passed in Mississippi practically coincides with the Uniform Negotiable Instrument Law and sub-section 4 of section 119, provides that a negotiable instrument is discharged ''by any other act which will discharge a simple contract for the payment of money.'' Section 197 of this same law repeals ''all laws and parts of laws inconsistent with this act.''

Sub-section 4 of section 119 of the Negotiable Instrument Law of Mississippi does not appear from the decisions to have been construed by our courts but this iden-

tical section is contained in the Negotiable Instrument
Act as passed by the state of Washington; and in *North
Pacific Mort. Co.* v. *Krewson et al.,* 224 Pac. 566, in a
statement of facts which construe the question under dis-
cussion, the supreme court of that state comments on
page 567, "The section of the Negotiable Instrument Act
which applies to this question is 3509, Rem. Comp. State,
sub-section, reading as follows: 'A negotiable instrument
is discharged . . . by any other act which will dis-
charge a simple contract for the payment of money.'
This section is but a statutory enactment of the law
merchant and the common law. It does not undertake
to define what constitutes a release of a simple contract,
but leaves that to be decided by what was the rule under
the law merchant and the common law."

We also refer the court to *Davis* v. *Gutherl et al.,* 152
Pac. 14; *J. I. Case Threshing Machine Co.* v. *Bridger,*
63 So. 319 (La.). The Negotiable Instrument Law of
Louisiana on this subject is the same as that of the states
of Washington and Mississippi. See, also, *Crawford* v.
*Roberts,* 8 Ore. 324, 39 Pac. 324; *McCloud* v. *State,* 69
Miss. 221, 13 So. 268, 79 Miss. 175.; Crawford Negotiable
Instrument Law, page 195.

Where the Negotiable Instrument Law speaks, it con-
trols; where it is silent, resort must be had to the law
merchant or common law regulating commercial paper.
See 137 Ky. 427, 125 S. W. 1071, Ann. Cas. 1912A 439.

We submit that sub-section 4 of section 119 of the NIL
as passed by Mississippi on this question has made the
law as it originally was in Mississippi before the Joint
and Several Debtor Statute was passed in 1857.

*Percy & Percy,* for appellee.

One point of law is presented in this appeal: Appel-
lant contends that chapter 39, Hemingway's Code of
1917, Joint and Several Debtors, is repealed by section
2697 (4) of chapter 50 of Hemingway's Code of 1917,

Negotiable Instruments. Appellant's argument is fair and clear, but is supported neither by reason nor by authority. There is no Mississippi case on all-fours with the present case, but by far the closest authority of our court is *Elkin Henson Grain Co.* v. *White*, 98 So. 531, in which the court was asked to hold that the Negotiable Instrument Law repealed section 2085 of Hemingway's Code, which declares all notes given for the purchase of intoxicating liquor to be void. Although the negotiable instrument law apparently treated such notes as other notes and negotiable, our court held such notes void, even when in the hands of a *bona-fide* purchaser and refused to repeal section 2085.

Appellant asks this court to repeal by implication a statute which has been a part of the law of Mississippi since 1857, and which has guided bankers, merchants and lawyers in the handling of commercial papers since that date. It is a statute which declares a far more just rule than the more generally accepted rule as will be seen by reading 1 Williston on Contracts, section 333-A, 334 and 335. To show the general dissatisfaction which the so-called common-law rule creates, the same authority cites in section 336 the very numerous statutory changes in that rule adopted by the various states.

Counsel for appellant misconceive both section 2697, Negotiable Instruments Law, and chapter 39 on Joint and Several Debtors. They apparently think that section 2697 is designed to describe how persons *primarily* liable on negotiable paper are discharged, when in truth and in fact it describes how a negotiable instrument it self is discharged and the whole act is silent as to how persons primarily liable are discharged. One of the ways of discharging them is, of course, by the discharge of the instrument, but there are other ways and the negotiable instrument act being silent as to those other ways, the law of the state, whether common law or statutory, prevails. This is apparent from a reading of section 2697.

Contrast that section with the following one, section 2698, entitled, ''When persons secondarily liable on, discharged.'' The former section describes the five methods by which a negotiable instrument may be discharged, but the latter section in great detail goes into six different ways that a person secondarily liable may be discharged. This distinction is clearly pointed out in *Merchants Nat'l Bank of Billings* v. *Smith,* 59 Mont. 280, 196 Pac. 523, 15 A. L. R. 430.

Properly speaking, without a statute such as our joint and several statute, the release of a co-maker would never discharge the instrument itself, but would only give a defense to the other maker, if he were sued. The truth of this may be seen by the following illustration:

A, B and C are joint and several makers on a promissory note. A pays something to the holder to be released, B knows of the transaction and consents to it. C neither knows nor consents. By the release of A, C too is released, according to the usual rule, but B is not and B may be sued on the instrument. In other words, the instrument is not discharged, although A and C are discharged.

This distinction is overlooked in the two cases cited by counsel for appellant: *Case Threshing Machine Co.* v. *Bridger,* 63 So. 319, and *Northern Pac. Mort. Co.* v. *Krewson,* 224 Pac. 566. But with this distinction in mind it will be seen that the release of Branton in this case, even without our Joint and Several Statute, did not discharge the note and so does not come within the purview of subdivision r of section 2697, Negotiable Instruments Law.

There is a great dearth of authorities dealing with sub-division 4 of section 2697. We will, therefore, call the court's attention to Williston's criticism of that subdivision in which he implies that the paragraph may not have changed the state law where the state law was in conflict with the natural implication of the paragraph 2 Williston on Contracts, section 1189, at page 2178.

The vice in counsel's reasoning is the assumption that our Joint and Several Debtors Statute applies only to negotiable instruments or to bills and note. It applies to all simple contracts for the payment of money executed by two or more parties jointly, or jointly and severally.

It will be noted by the court that the only cases decided under sections 2169, 2170, have been on obligations other than commercial paper. For instance *Horn* v. *Tartt,* 76 Miss. 304, in which case the statute was applied to the sureties on a guardian's bond, and in *Hyman* v. *Stadler,* 63 Miss. 362, to a partnership obligation. Counsel is, therefore, asking that by implication a statute affecting all joint and several obligations be repealed. The suggestion is fantastic.

We submit that neither on authority nor on reason can paragraph 4 of section 2697 be held by implication to repeal a chapter or our law which covers the whole field of joint and several obligations.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, O. B. Crittenden, doing business as O. B. Crittenden & Co., filed suit against the appellant, J. E. Branton, on two notes, alleging that on January 1, 1921, the defendant, for good and valuable consideration with W. C. Branton, executed in the name of Branton Bros. two promissory notes in favor of O. B. Crittenden & Co., of Greenville, or bearer, one note for seven thousand seventy-four dollars and eighty-five cents, due on January 1, 1921, and the other, for seven thousand seventy-four dollars and eighty cents, due January 1, 1922, both of said notes bearing interest from date until paid at the rate of eight per cent per annum and ten per cent. for attorney's fees in case they were placed in the hands of an attorney for collection. It is further urged that, although the said notes were past due and demand had been made frequently for the payment of same, said

defendant has refused and still refuses to pay the amount due the plaintiff on said notes, the total amount of said notes, with interest from January 1, 1922, at eight per cent., except for credits paid at various times, being now due and payable, the plaintiff demands judgment for the sum of sixteen thousand dollars, with interest and all costs. The notes are made an exhibit to the declaration, each containing the following stipulation:

"For valuable consideration W. C. Branton is released and discharged from liability on this note. Dated November 6, 1925. O. B. Crittenden & Co."

The defendant, J. E. Branton, filed a plea of the general issue denying he was indebted to plaintiff in the amount sued for, or for any sum whatever. The defendant also filed two special pleas. The first special plea alleged that during the year 1920, W. C. Branton and the defendant were operating as Branton Bros. and borrowed certain money from O. B. Crittenden & Co. for the purpose of making a crop of cotton and corn on a plantation situated in Washington county, Miss., and that they executed a mortgage to the said Crittenden & Co. securing the sum so borrowed and any other advances, whereby the said W. C. and J. E. Branton undertook to ship certain cotton to O. B. Crittenden & Co., which company was to sell the same upon a commission basis; that, complying with the terms of the said trust deed, during the fall of 1920 and the early part of 1921, the defendant, J. E. Branton, and W. C. Branton delivered approximately one hundred and fifty bales of cotton to the said O. B. Crittenden & Co. to apply on said debt; that on January 1, 1921, a part of the cotton was unsold and a settlement had not been made with the said O. B. Crittenden & Co., and the debt, above mentioned, was renewed upon the execution of the notes sued upon herein; that upon delivery of said cotton to the said O. B. Crittenden & Co., the defendant instructed the plaintiff to sell said cotton at once, but the plaintiff neglected and failed to sell the same, contrary to the

instructions of the defendant, until the price of cotton had declined to the extent that said cotton did not have much value; that O. B. Crittenden & Co. had never rendered any statement of account of said transactions to this defendant, and on account of the failure of O. B. Crittenden & Co. to sell said cotton, the defendant had suffered a loss of several thousand dollars and by reason thereof the defendant is not indebted to the plaintiff in any sum whatsoever, and this he stands ready to verify.

To this special plea, the plaintiff moved the court to require the defendant to particularize his said plea so as to give specific information; that it did not show the price of cotton at the time the alleged instruction to sell was given by the defendant, nor did it show the price of cotton at the time it was sold by the plaintiff; that it did not show that the cotton had ever been sold, or that it was the duty of the plaintiff to sell said cotton. The court sustained the motion to make said plea No. 1 more specific.

The defendant filed also special plea No. 2, which is in the following language:

"Comes the defendant, J. E. Branton, by his attorney, and for special plea No. 2 to the declaration herein filed against him alleges that the plaintiff, in writing, a copy of which is hereto attached, marked Exhibit A, released W. C. Branton, the joint and several maker of the notes sued on, and that by reason of the release of W. C. Branton the notes have been discharged, and there is no liability upon this defendant, and this the defendant stands ready to verify."

The second special plea was demurred to and the demurrer sustained. The court thereupon entered the following judgment:

"This day came the plaintiff by their attorneys and the defendant being solemnly called came not but wholly made default, and it appearing to the court that the defendant, J. E. Branton, had been duly, legally, and per-

sonally served with process herein and within the time
required by law, and the court having been fully advised
in the premises doth find for the plaintiff in the sum of
ten thousand four hundred and seventy-four dollars and
fifty cents. It is therefore ordered, adjudged, and de-
creed that the plaintiff, O. B. Crittenden & Co. do have of
and recover from the defendant, J. E. Branton, the sum
of ten thousand four hundred and seventy-four dollars
and fifty cents, and all costs expended in this behalf, for
which let execution issue.''

The appellant contends that the court erred in sus-
taining the demurrer, because the release of W. C. Bran-
ton avoided the note or released him from liability under
the Negotiable Instruments Act, and that this act re-
peals the Joint and Several Debtor Statute contained in
chapter 39 of Hemingway's Code, section 2169 (section
2682, Code of 1906), which reads as follows:

''In all cases of joint and several indebtedness, the
creditor may settle or compromise with and release any
one or more of such debtors; and the settlement or re-
lease shall not affect the right or remedy of the creditor
against the other debtors for the amount remaining due
and unpaid, and shall not operate to release any of the
others of the said debtors; and all mortgages or securi-
ties for the said indebtedness shall remain in full force
against the debtors not released, in favor of the creditor,
and also in favor of such of the debtors as may be en-
titled to contribution, payment, or reimbursement from
others of said debtors, and the right of payment, con-
tribution or reimbursement, as among themselves, shall
not be affected by this section; and if any debtor, so re-
leased, shall have paid more than his ratable share of
the whole debt, the whole amount paid by him shall be
credited, and if less than his ratable share, then the full
amount of his ratable share shall be credited, and the
other debtors shall be liable for the residue.''

Section 119 of the Negotiable Instruments Act (section 2697, Hemingway's Code), entitled "*Instrument—How Discharged,*" reads as follows:

"A negotiable instrument is discharged:

"(1) By payment in due course by or on behalf of the principal debtor.

"(2) By payment in due course by the party accommodated, where the instrument is made or accepted for accomodation.

"(3) By the intentional cancellation thereof by the holder.

"(4) By any other act which will discharge a simple contract for the payment of money.

"(5) When the principal debtor becomes the holder of the instrument at or after maturity in his own right. Laws 1916, chapter 244. In effect July 7, 1916."

So the question presented for decision mainly is whether or not this section of the Negotiable Instruments Law repeals section 2169 of Hemingway's Code (section 2682 of the Code of 1906). It is a familiar rule of statutory construction that repeals by implication are not favored. In the case of *Elkin Henson Grain Co.* v. *White,* 134 Miss. 203, 98 So. 531, which case seems to us to be applicable to the point involved here, we had before us the question as to whether the Negotiable Instruments Law repealed section 2085 of Hemingway's Code, which declared void all notes or other securities given for the purchase price of intoxicating liquor. This court held that the said section was not repealed by the Negotiable Instruments Law, that this act did not repeal, by implication, all the other statutes which might be applied to a negotiable instrument. It will be noted from a careful reading of section 2169 that this statute is not only applicable to negotiable instruments, but that it applies to all kinds of joint and several indebtedness, and, consequently, should not be held to be repealed by implication. The Negotiable Instruments Act, in the section above set out, does not specifically provide what the effect of releasing one of the joint and several makers of a ne-

gotiable instrument would be. We think that both stat-utes can stand without conflict. The law merchant or common law of negotiable instruments was modified by section 2169, Hemingway's Code, and it was a part of the law of the state when the Negotiable Instruments Law was enacted, and, unless repealed expressly or by implication, remains a part thereof. We think this stat-ute is a wholesome statute, promotive of the public wel-fare, and that it should not be held to be repealed by the Negotiable Instruments Law. As we understand it, it was not the purpose of the legislature to repeal all other statutes affecting negotiable instruments; and therefore the statute stands and is applicable to the present trans-action.

The effect of the release of W. C. Branton under the last part of this statute is to release one-half of the joint and several obligation. It is expressly provided in the last paragraph of the said statute that:

"If less than the ratable share, then the full amount of his ratable share shall be credited, and the other debtors shall be liable for the residue."

The special plea did not present a complete defense to the entire obligation, but was effective to the extent of one-half of the joint and several obligation, and the court therefore was in error in sustaining the demurrer because it was a defense to at least one-half of the amount sued for.

It will be further noted from the statement of facts that there was a plea of the general issue which was un-disposed of so far as the record shows. The judgment entered by the court below was a default judgment, and was improperly entered in the absence of the disposition of the plea of the general issue.

It follows from what we have said that the judgment of the court below will be reversed and the case remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*

## ON SUGGESTION OF ERROR.

The suggestion of error filed is more addressed to the change of certain words in the opinion than to the result. Said suggestion of error quotes from the opinion as follows:

"The effect of the release of W. C. Branton under the last part of this statute is to release *one-half* of the joint and several obligation. It is expressly provided in the last paragraph of the said statute that 'if less than the ratable share, then the full amount of his ratable share, shall be credited, and the other debtors shall be liable for the residue.' The special plea did not present a complete defense to the entire obligation, but was effective *to the extent of one-half* of the joint and several obligation, and the court therefore was in error in sustaining the demurrer because it was a defense *to at least one-half* of the amount sued for." (The underscoring is ours.)

We see no objection to changing the words "one-half" as used in the above quotation to the words "ratable share," and the same will be sustained to that extent, but we do not decide whether it would be competent on a retrial to show *aliunde* the notes the understanding between the partners, nor do we decide whether or not the notes are the measure of the obligation between all parties.

As suggested, the record did not show what part of the partnership undertakings were to be borne by each of the partners, but we are leaving the court below on the retrial to determine these questions.

As the judgment rendered heretofore is correct in its results, the suggestion of error will be overruled.

*Suggestion of error overruled.*