FISH MEAL COMPANY *v.* BRONDUM, et al.

No. 42095 December 18, 1961 135 So. 2d 825

574

*Ebb J. Ford,* Gulfport, for appellant.

*Robert H. Oswalt,* Pascagoula, for appellees.

ETHRIDGE, J.

Appellees W. C. Brondum, Jr., and Cecil McGee brought this action in the Chancery Court of Jackson County, against appellant, Fish Meal Company, for the purposes of obtaining cancellation of a judgment against them and others upon a promissory note which they had indorsed, and damages for the Company's refusal to cancel the judgment. The defendant's general demurrer to the bill of complaint was overruled. This interlocutory appeal was taken from that order. The question is whether release by the holder of an unlimited and prior indorser discharged subsequent limited indorsers. We hold that it did.

## I.

The bill of complaint and exhibits reflect the following facts: On March 13, 1957, The Delta Towing and Transportation Co., Inc. (called Delta), at Pascagoula, Mississippi, executed a promissory note payable to defendant Fish Meal Company (called Fish Meal) or order in the sum of $100,000. It was payable in installments of $25,000 per year beginning March 13, 1958. On the back of the note there were the following indorsements:

### "INDIVIDUAL ENDORSEMENT

/s/ Arnold V. Walker

Unqualified and Unlimited

"The following endorsements are limited by the endorsers to the amount of Common Stock owned in the DELTA TOWING & TRANSPORTATION CO., INC. AS OF March 13, 1957.

| | |
|---|---|
| /s/ George J. Hollister | 50 shares |
| /s/ E. Kihyet & Sons, by | |
| Jamile E. Kihyet | 100 shares |
| /s/ W. C. Brondum, Jr. | 100 shares |
| /s/ Milton M. Bartlett | 90 shares |
| /s/ James H. Colmer | 25 shares |
| /s/ Carl A. Megehee | 50 shares |
| /s/ Cecil C. McGee | 50 shares |
| /s/ A. Owen Davis | 50 shares" |

There was default on the note, and in 1958 Fish Meal sued the maker, Delta, and all of the indorsers, in Cause No. 5578 in the Circuit Court of Jackson County. On May 29, 1958, the Circuit Court entered its judgment in favor of Fish Meal against Delta as principal in the sum of $100,000. It was further ordered that "judgment in favor of the plaintiff is hereby entered against the sureties on said note in the following amounts respectively to-wit:

1. Arnold V. Walker, $100,000, . . . as surety on said note (but with a credit of $2,697.95 already paid).
2. Against George J. Hollister, $5,000.00 as surety.
3. Against E. Kihyet & Sons, a partnership consisting of Mrs. Fannie Kihyet, Tofie E. Kihyet, Jamile E. Kihyet and Antone E. Kihyet, $10,000.00 as surety.
4. W. C. Brondum, Jr., $10,000.00 as surety.
5. Against Milton M. Bartlett, $9,000.00 as surety.
6. Against James H. Colmer, $2,500.00 as surety.
7. Against Carl A. Megehee, $5,000.00 as surety.
8. Against Cecil C. McGee, $5,000.00 as surety.
9. Against A. Owen Davis, $5,000.00 as surety.''

In January 1959, Fish Meal filed suit in the Chancery Court of Jackson County, Cause No. 14,617, against Arnold V. Walker and other members of his family. The bill recited indorsement of Delta's note by Walker. It alleged that at the time Delta was in bad financial condition, and Walker was the largest stockholder and a man of considerable means; that Fish Meal had agreed to and did release its first mortgage on certain fishing vessels owned by Delta, and to accept in lieu thereof Delta's note indorsed without limitation by Walker. At the time of his indorsement of the note Walker owned several tracts of real property in Jackson County. It was alleged that in 1957, with the intent to hinder, delay and defraud Fish Meal in collection of its note, Walker conveyed this land to his wife and children without any consideration. The bill prayed for cancellation of these deeds and imposition of a lien upon the land in favor of Fish Meal.

On October 31, 1959, the chancery court entered a ''decree dismissing cause'' with prejudice to the company. The decree recited that counsel for both sides had reached a settlement of the matter and agreed on a consent decree; that Arnold V. Walker would pay Fish Meal $44,000.00 ''in full, final and complete settlement and satisfaction of his individual liability to the com-

plainant under that certain judgment'' in circuit court Cause No. 5578. This was with the understanding that Walker, ''not having paid more than his ratable share of the whole debt shall not be entitled to contribution from the other defendants in said cause and judgment debtors on said judgment.'' The decree recited that the settlement between Fish Meal and Arnold V. Walker ''shall not affect the right or remedy of the Fish Meal Company against the other judgment debtors in said suit for the amount remaining due and unpaid''. Hence the chancery action was dismissed with prejudice to the company. None of the indorsers on the note, other than Walker, were parties to this suit.

Pursuant to this consent decree of the chancery court, the judgment in case No. 5578 was cancelled in full on the judgment roll as against Walker, and later Bartlett, whose indorsement followed that of Brondum, but was prior to that of McGee.

The bill in the instant case charged that the release of Bartlett was without any consideration. It further averred there was no agreement among the indorsers to be liable on the 1957 note to Fish Meal in any manner other than in the order and manner in which the note was indorsed; that complainants Brondum and McGee were only secondarily liable on the note and judgment, with Walker having an ''unqualified and unlimited'' indorsement; that discharge of the judgment and note against this prior unlimited indorser, Walker, constituted a release of complainants as subsequent indorsers on the note and the resulting judgment. Hence the bill averred that complainants were entitled to have the judgment in cause No. 5578 cancelled as against them by Fish Meal and the Circuit Clerk of Jackson County. The Company and the clerk had refused to do this. It was averred their failure to do so was costing complainants a substantial sum of money daily, was preventing them from making effective sales of their real and

personal property, and damaging their credit reputations. Hence the present bill asked the chancery court to enter a decree issuing a mandatory injunction against Fish Meal and the circuit clerk, compelling them to enter satisfaction of the circuit court judgment against complainants, and to award them $5,000 damages and attorney's fee.

The defendant filed a general demurrer to the bill of complaint, asserting there was no equity on the face of it. The chancery court overruled it and allowed an interlocutory appeal to settle all of the controlling principles in the case.

## II.

The release by the payee and holder of the note, Fish Meal Company, of the first indorser of such note, Arnold V. Walker, who indorsed it "unqualified and unlimited", constituted a release of the subsequent limited indorsers, namely, the complainants in this cause, Brondum and McGee.

The note on its face is negotiable, and complies with the requirements of Code Sec. 42, including the fact that the maker, Delta, made an unconditional promise to pay a certain sum in money, $100,000, at fixed times. As between Delta and the indorsers, they are regarded as sureties. 8 Am. Jur., Bills and Notes, Sec. 464. Their liability among themselves is that expressed by the paper itself and is successive, not joint. Ibid., Sec. 461.

The Negotiable Instrument Act (NIL) applies to negotiable instruments only, and excludes non-negotiable instruments from its application. 10 C. J. S., Bills and Notes, Sec. 12. The instant note is clearly negotiable on its fact, so provisions of the N. I. L. apply to it. It is not necessary to pass upon the effect of the limited indorsements on the back of the note upon its negotiabili-

ty to subsequent parties, since no subsequent holders of the note are involved.

 █ Under the Uniform Negotiable Instruments Law, Miss. Code 1942, Rec., Secs. 42-243, an indorser is not primarily liable on the note, but is only secondarily liable. Code Secs. 233, 161, 104; Thompson v. Gore, 180 Miss. 560, 178 So. 81 (1938). Under Sec. 161 a person secondarily liable on the instrument is discharged ''by the discharge of a prior party.'' █ In short, the release by the holder of a negotiable instrument of any party to the instrument operates as a discharge of all subsequent parties to it, unless they consent. 10 C. J. S., Bills and Notes, Sec. 474(c). An agreement between the holder and a prior party which materially changes or alters the terms of the original obligation of the instrument discharges the party secondarily liable. Ibid., Sec. 470.

Thompson v. Gore, supra, involved this precise issue. J. W. Hamner, Jr., executed his promissory note to a bank. Indorsed on its back there appeared the names of O. T. Hamner and under it that of T. O. Gore. Later the indorser, O. T. Hamner, paid to the bank a sum of about one-sixth of the obligation in the note, and the bank, through its receiver, gave him a receipt releasing him from further liability on the note. This compromise settlement with the receiver of the bank, then insolvent, was made by authority of an order of the chancery court, which provided that on payment of that sum O. T. Hamner would be released from further liability, but that such release should not affect the rights of the receiver as to other makers and indorsers, nor the liability of makers and indorsers other than O. T. Hamner.

Subsequently the bank's receiver filed an action against the maker and Gore, the second indorser. He defended on the ground that the release of the prior indorser, O. T. Hamner, resulted in his discharge from any obligation on the note. The court agreed. It said

that under Miss. Code 1942, Secs. 104, 105, 109 and 233, an indorser is not primarily but only secondarily liable on the note. Under Sec. 161 a person secondarily liable is discharged by the discharge of a prior party. Indorsers are liable in the order in which they indorsed. Sec. 109. O. T. Hamner, who was released, was a prior indorser, and his release "discharged appellee from further liability."

In *Thompson,* as in the instant case, the payee of the note under a court decree released a prior indorser. This was held to discharge a subsequent indorser. In the instant case, the settlement and compromise by Fish Meal with Walker, a prior indorser, discharged the subsequent indorsers, Brondum and McGee, appellees.

Britton, Bills and Notes (1943), Sec. 290, summarizes the pertinent rule as follows: "Under Section 120(3) a secondary party is discharged, 'by the discharge of a prior party,' the reason for such rule being that the act of discharge removes a possible source of reimbursement from all parties to the instrument subsequent to the party thus discharged." This is distinguishable from the situation where there is a release of the principal debtor with a reservation of rights against the surety, under NIL, Sec. 120(5), Miss. Code 1942, Sec. 161(5). Britton, Ibid., Sec. 292. Beutel's Brannan, Negotiable Instruments Law (7th Ed., 1948), pp. 1143-1147, analyzes this question. The author there states that Thompson v. Gore held, "An equity decree releasing a prior indorser but 'not affecting the liabilities' of the other indorsers, releases a subsequent indorser from liability."

Code 1942, Sec. 334, provides that a creditor may settle with and release any one or more of joint and several debtors. However, *Thompson* held that it had no application there because the subsequent indorser was not a joint and several debtor. The decree authorizing discharge of the prior indorser and holding the latter one "was unauthorized and void to that extent", since

the latter gave no consent to the compromise. The attempted retention of liability as to the subsequent indorser was beyond the court's power. By the same token Code Sec. 335 is not applicable.

■■ ■ Appellant argues that the NIL does not apply to this note, upon which the circuit court judgment was rendered, and that it is a non-negotiable instrument, because of indefiniteness in the amounts of the limited indorsements. We have already stated that the note on its face fully complies with the NIL's requirements of negotiability. Assuming but not deciding that the limited indorsements on the back of the note deprive it of further negotiability, we are not concerned with that latter factor here. If this note is negotiable on its face, the provisions of the NIL apply.

However, even assuming appellant's major premise, the indorser of a non-negotiable instrument is liable according to the purport of the indorsement. 8 Am. Jur., Bills and Notes, Sec. 560. Here a prior, unlimited indorser or surety on an assumed non-negotiable instrument was discharged. The manifest purpose of the ''unqualified and unlimited'' indorsement, and of the subsequent limited ones, was to make the liabilities successive not joint. See 8 Am. Jur., Bills and Notes, Sec. 461. Moreover, even if that were not the plain intent of the peculiar nature of these indorsements, Miss. Code 1942, Rec., Sec. 334, provides that, if any joint and several debtor has been released after paying less than his ratable share, the full amount of his ratable share shall be credited on the obligation. Walker's ratable share was the entire obligation, as contrasted with the limited, contingent and successive obligations of appellees. Crediting his full amount, appellees were released *in toto*. Cf. Yazoo Delta Mortgage Co. v. Harlow, 150 Miss. 105, 132, 116 So. 441 (1928). This is consistent with Code Sec. 334, and in accord with the manifest intention of the parties in the peculiar circumstances of these particular and

successive indorsements. 45 Am. Jur., Release, Sec. 34; Anno., 53 A. L. R. 1420, 1444 (1928); see also Branton v. O. B. Crittenden & Co., 145 Miss. 531, 111 So. 150 (1927).

## III.

Appellant argues that its circuit court judgment against the maker and all indorsers had the effect of merging the note into the judgment, which was in its favor against all defendants; and that therefore the release of one of the defendants did not affect the obligations of the others. We do not agree.

The judgment of the circuit court itself specifically provides for liabilities of the judgment debtors in accord with the provisions of the note. It states that Walker's liability as an indorser is unlimited and unqualified; and then further limits the liabilities of subsequent indorsers to stated amounts "as a surety."

 Moreover, the rule that a judgment merges the cause of action on the note in the judgment applies generally to judgments on negotiable instruments, but this is primarily to bar subsequent actions on the instrument itself. 8 Am. Jur., Bills and Notes, Sec. 798. ██ The doctrine of merger is designed to promote justice and applies no further than that end requires. It is based on the theory that a superior right, the judgment, covers an inferior right, the note. Principally it precludes the relitigation of a cause of action, by the doctrine of res judicata. 30A Am. Jur., Judgments, Secs. 313-315. ██ Upon the merger, the judgment becomes evidence of the debt in the sense that a proceeding in reference to it should be filed on the judgment; but it does not mean an annihilation and discharge of the debt so as to preclude an examination of its character or nature for all purposes.

 ██ The essential nature of the respective rights of the parties under the note is not changed by recover-

ing a judgment upon it. One judgment debtor may be the maker and the others successive indorsers, with the same corresponding rights, liabilities and duties among them as in the note. ▮▮ This would include the principle that a secondary party is discharged by the discharge of a prior party. See 30A Jur.; Judgments, Sec. 321. Hence the recovery of the circuit court judgment against the maker and indorsers of this note did not change their rights and duties *inter se*.

Affirmed and Remanded.

*McGehee, C. J.*, and *Gillespie, Rodgers* and *Jones, JJ.*, concur.