BRENTON STATE BANK OF
JEFFERSON, Appellee,

v.

John F. TIFFANY, Donna M. Tiffany,
d/b/a Tiffany Farms and d/b/a Dia-
mond Ring Farm Service and d/b/a
First Farlin Company, Appellants.

BRENTON STATE BANK OF
JEFFERSON, Appellee,

v.

John F. TIFFANY, Donna M. Tiffany,
d/b/a Tiffany Farms and d/b/a Dia-
mond Ring Farm Service and d/b/a
First Farlin Company, Appellants,

Phoenix Mutual Life Insurance
Company, Appellee,

Kewa Exploration Inc., George E.
Mobley, Defendants.

No. 87–1323.

Supreme Court of Iowa.

May 17, 1989.

Scott H. Hughes, Council Bluffs, for ap-
pellants Tiffany.

James C. Ellefson of Welp, Harrison,
Brennecke & Moore, Marshalltown, for ap-
pellee Phoenix Mut. Life Ins. Co.

Michael F. Mumma of Mumma & Peder-
sen, Jefferson, and Rodney P. Kubat of

Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellee Brenton State Bank of Jefferson.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

SCHULTZ, Justice.

In this appeal, we have consolidated related appeals from two district court actions. One is an appeal of a ruling in a replevin action by a creditor. The debtors appeal from a grant of summary judgment, claiming that the creditor's prior real estate foreclosure action had merged the debt with the judgment, thereby precluding a second action to replevin additional collateral. The other appeal involves the district court order approving, in part, the final report of the creditor as receiver in the foreclosure action. The debtors challenge the allowance of fees to the receiver and its attorney. The first mortgage holder claims the receiver should have paid it interest on the amount of its original judgment during the period of redemption. We affirm on all appeals.

In 1984, the Brenton State Bank of Jefferson (Bank) loaned John F. and Donna M. Tiffany (Tiffanys) $460,000. In exchange, the Bank obtained a note from the Tiffanys that was secured by a second mortgage on farm land and a security interest in their farm equipment and crops. Phoenix Mutual Life Insurance Company (Phoenix) had a first mortgage on the farm land.

After the Tiffanys defaulted on the loan, the Bank commenced a replevin action in late 1984 for possession of the collateral listed in the security agreement. When the Tiffanys took bankruptcy, the action was stayed. In 1985, the Federal Bankruptcy Court lifted the stay. The Bank then initiated a separate action against the Tiffanys to foreclose the real estate mortgage. It obtained a default judgment which it later had set aside.

The Bank then moved for summary judgment in the replevin action. The Tiffanys resisted, asserting that the Bank, by previously securing the default judgment, had merged the underlying indebtedness into the foreclosure judgment, thereby precluding the Bank from obtaining a second judgment on the same indebtedness in the replevin action. The district court rejected this defense and entered judgment in favor of the Bank for money damages in the amount of $480,000 and for a writ of replevin. On appeal, we reversed this judgment and remanded for further proceedings. *Brenton State Bank of Jefferson v. Tiffany*, 400 N.W.2d 576, 578 (Iowa 1987) (*Tiffany I*). Upon remand, the district court again granted the Bank's motion for summary judgment, however, this judgment only allowed the Bank the right to possession of the collateral. The Tiffanys herein appeal this decision.

In the mortgage foreclosure action, the decree recognized Phoenix as the first lien holder and accordingly entered judgment against the Tiffanys for $219,310.24. The Bank was appointed receiver to manage the real estate during the pendency of the action and the redemption period. Phoenix purchased the property at the sheriff's sale, paying $100 less than its existing judgment against the Tiffanys. This left Phoenix with a $100 deficiency and cut off the Bank's interest in the land and sheriff's sale proceeds. However, the Bank, as receiver, collected rents and filed its final report in March of 1987. The receiver proposed paying compensation to the Bank and its attorney for receivership work done. Additionally, the report sought to pay Phoenix its $100 deficiency, plus interest on the deficiency only. The remaining proceeds were to be paid to the Bank, as junior mortgagee on the property, in partial satisfaction of the Tiffanys' indebtedness.

Following objections to the final report by the Tiffanys and Phoenix, a hearing was held. The court required the Bank to pay $14,766.58 to the receivership for mismanagement of the 1985 rental proceeds. The court then approved the balance of the report, allowing the requested fees. On appeal, Phoenix urges that it should be entitled to interest on the full amount of its $219,310.24 judgment, rather than on just the $100 deficiency. The Tiffanys complain

of the attorney and receiver fee allowances, maintaining they are entitled to the proceeds of the receivership.

I. *Replevin Action.* This portion of the appeal is the continuation of *Tiffany I.* There, we first determined that the vacation of the default judgment in the foreclosure action was without authority. 400 N.W.2d at 578. We held that the judgment of foreclosure was the final judgment and determined that *"at the present time,"* the merger defense was meritorious. *Id.* (emphasis added). Accordingly, we reversed the order of the district court that granted the Bank a judgment of $480,000 plus interest, possession of the property and the right to request a hearing to determine the proper amount of interest to be added to the judgment. We also remanded the action to the district court for further proceedings. *Id.*

Upon remand, the Bank renewed its motion for summary judgment, limiting its request to possession of the collateral under its security agreement. The court granted this renewed motion for summary judgment, holding that the Bank is entitled to possession of the collateral and issuing a writ of replevin for it.

The Tiffanys urge that nothing has changed since our ruling in *Tiffany I.* They correctly note our determination that the foreclosure decree was the final judgment in the case and that a judgment given for less than the full relief requested will be interpreted as a denial of further relief. *Id.* They urge that we could have reversed the money judgment and allowed the replevin action to stand if we believed that defendants were entitled to possession. In response to this latter contention, it is apparent that if we had decided the possession issue in *Tiffany I* adversely to the Bank, we would not have remanded the action to the district court for further proceedings.

Good reason supported our decision in *Tiffany I* to limit our opinion on the merger issue to the present situation and defer ruling on the validity of the replevin action alone. The dominant issue addressed by the parties in their briefs concerned the setting aside of the default judgment. The parties essentially did not brief the issue of the default judgment's effect on the replevin action.

The Tiffanys' merger contention regarding the replevin action causes us to further examine the doctrine. Section 18 of the Restatement (Second) of Judgments (1982), provides the general rule of merger as:

When a valid and final personal judgment is rendered in favor of the plaintiff:

(1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment. . . .

The comments of this section in pertinent part state:

a. *The doctrine of merger.* When the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it.

■ The doctrine of merger is an aspect of res judicata which prevents relitigation of existing judgments. *Moore v. Sun Lumber Co.,* 166 W.Va. 735, 276 S.E.2d 797, 800–01 (1981); *Behr v. Behr,* 46 N.C. App. 694, 266 S.E.2d 393, 395–96 (1980). Merger has the effect of issue preclusion. *Restatement (Second) of Judgments* § 17, comment c (1982). It serves to prevent the splitting of causes of action.

The doctrine of merger is not as relentless and destructive as it might first appear. Merger does not discharge the debt for all purposes. 46 Am.Jur.2d *Judgments* § 390, at 556 (1969); 50 C.J.S. *Judgments* § 599, at 23 (1947). The judgment only changes the form of the action for recovery. The creditor retains the right to enforce a lien or gain possession of property held as collateral for the debt. 46 Am. Jur.2d *Judgments* § 393, at 557–58 (1969); 50 C.J.S. *Judgments* § 599, at 23 (1947). The comment to section 18 of the Restatement fortifies this contention by stating in part:

g. *Incidents of claim preserved.* When by reason of the plaintiff's obtaining judgment upon a claim the original

claim is extinguished and rights arise upon the judgment, advantages to which the plaintiff was entitled with respect to the original claim may still be preserved despite the judgment. *Thus if a creditor has a lien upon property of the debtor and obtains a judgment against him, the creditor does not thereby lose the benefit of the lien.*

(Emphasis added.)

■ Our case authority has adhered to the rule that a creditor does not lose its lien on the debtor's property by taking a judgment. *Zeman v. Canton State Bank,* 211 N.W.2d 346, 351 (Iowa 1973); *Beckett v. Clark,* 225 Iowa 1012, 1014–15, 282 N.W. 724, 726 (1938); *Hamilton v. Henderson,* 211 Iowa 29, 33, 230 N.W. 347, 348 (1930). The mortgage remains a lien until the debt it was given to secure is satisfied. *Beckett,* 225 Iowa at 1015, 282 N.W.2d at 726. Thus, the mortgage is not affected by a judgment taken on the note. *Id.* at 1015, 282 N.W.2d at 726.

■ Additionally, the doctrine of merger is limited by concerns of justice. "The doctrine of merger will not be carried any further than the ends of justice require." 50 C.J.S. *Judgments* § 599, at 23 (1947). Although it is meant to prevent excessive litigation, its application to deprive a litigant of a cause of action is limited by equitable concerns. We applied this proposition in *Zeman* when we allowed the creditor a second repossession procedure after an unsuccessful foreclosure of the chattel mortgage securing the same property. 211 N.W.2d at 351–52. The creditor had trouble locating the property after the first foreclosure. When the creditor later found the property at the debtor's brother's farm in Minnesota, he seized the property under a Minnesota procedure. We held that merger did not preclude the second action. *Id.* at 351. The New Mexico court in *Tindall v. Bryan,* 54 N.M. 114, 215 P.2d 355 (1950), similarly held a Texas creditor, who foreclosed a chattel mortgage on cattle in Texas, was not precluded by merger from commencing a replevin action in New Mexico to repossess cattle wrongfully taken to

that state by the debtor. It was concluded that the doctrine of merger generally applies to all actions, but will not be carried any further than the ends of justice require. *Id.* at 117, 215 P.2d at 357 (*citing* 2 A. Freeman, *The Law of Judgments* §§ 585–86, at 1238–40 (5th ed.1925)). *See also Fish Meal Co. v. Brondum,* 242 Miss. 573, 585, 135 So.2d 825, 830 (1961).

■ We turn now to the application of these principles to this replevin action. The Tiffanys point out that in *Tiffany I,* we cited *Schnuettgen v. Mathewson,* 207 Iowa 294, 222 N.W. 893 (1929), for the proposition that when a mortgagee forecloses based on personal service on the debtor, this exhausts the full measure of remedy available, rendering the creditor without a right to bring a second action to recover that which was not sought in the first action. We do not now dispute this statement and similar ones made in *Beckett,* 225 Iowa at 1015, 282 N.W. at 726. Thus, we held in *Tiffany I* that the foreclosure judgment precluded a subsequent money judgment on the same indebtedness. *Tiffany,* 400 N.W.2d at 578. However, these statements, applying the doctrine of merger, are not applicable to the seizure of additional personal property collateral evidenced by a separate security agreement. The underlying debt still remains unpaid. As we shall subsequently discuss, a separate proceeding to enforce the security agreement does not violate principles of merger, res judicata or splitting of causes of action.

We do not believe that the Bank improperly split its causes of action. In this case, the Bank commenced its replevin action in 1984. A replevin action may not be joined with a separate action. Iowa Code § 643.2 (1983). The Tiffanys stayed the action by their bankruptcy proceeding. Upon a release by that court, the Bank then commenced its separate action for foreclosure of the real estate. These actions could not be joined.

In its replevin action, the Bank was not faced with an election of remedies problem. For real estate mortgage foreclosures,

Iowa Code section 654.4[1] requires an election between a separate suit on a note and a real estate foreclosure. However, under the Uniform Commercial Code, the secured creditor has several remedies available which are cumulative. Iowa Code § 554.9501. The purpose of this section of the act is "to broaden the options available to a secured creditor upon a debtor's default." *Kramer v. Exchange Nat'l Bank*, 118 Ill.2d 277, 285, 113 Ill.Dec. 248, 252, 515 N.E.2d 57, 61 (1987).

Furthermore, when the secured creditor has security in both real and personal property, section 554.9501 gives the creditor the option, upon default, to proceed against the real and personal property collateral in separate actions, whether concurrently or successively. *Id.* at 285, 113 Ill.Dec. at 252, 515 N.E.2d at 61. *Lenape State Bank v. Winslow Corp.*, 216 N.J.Super. 115, 130–31, 523 A.2d 223, 232 (1987); *State Bank v. Hansen*, 302 N.W.2d 760, 764 (N.D.1981); *Wiley v. Bank of Fountain Valley*, 632 P.2d 282, 285 (Colo.App.1981). Hence, a creditor is not required to make an election of remedies. The creditor may pursue any and all remedies available against the debtor until the debt is satisfied, without danger that any of these actions will constitute an irrevocable election of remedies. *Farmers State Bank v. Ballew*, 626 P.2d 337, 339 (Okla.App.1981); *Kennedy v. Bank of Ephraim*, 594 P.2d 881, 884 (Utah 1979); *Food City, Inc. v. Fleming Cos.*, 590 S.W.2d 754, 759 (Tex.Civ.App.1979); *Ruidoso State Bank v. Garcia*, 92 N.M. 288, 289–90, 587 P.2d 435, 436–37 (1978). We have indicated that the right to join related causes of action does not bar subsequent litigation of a distinct cause of action that was not joined. *Israel v. Farmers Mutual Ins. Ass'n of Iowa*, 339 N.W.2d 143, 146 (Iowa 1983) (*citing Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 401 (Iowa 1982)).

We thus conclude that although the Bank was entitled to only one satisfaction of its debt, it was not bound to seek satisfaction under its security agreement by joining this action with the real estate foreclosure. It was not required to join the actions and it had the right to cumulative and successive remedies. Consequently, the real estate foreclosure judgment does not merge with the replevin remedy and prevent the Bank from collecting the collateral under the security agreement. The district court was correct in its result.

Another principle supports this conclusion. In examining the applicability of merger, we also may look to the parties' agreement. Restatement (Second) of Judgments section 26 (1982), provides as follows:

When any of the following circumstances exists, the general rule of [merger] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

(a) *The parties have agreed in terms or in effect that the plaintiff may split his claim,* or the defendant has acquiesced therein....

(Emphasis added.)

The parties have agreed in their security agreement that:

[t]he rights and remedies herein conferred upon the Bank shall be cumulative and not alternative and shall be in addition to and not in substitution of or in derogation of rights and remedies conferred by the Uniform Commercial Code of Iowa, and other applicable laws.

Were we to hold that the Bank was limited to its mortgage foreclosure action as its sole remedy, we would be required to disregard the clear, unambiguous language of the contract that the remedies are "cumulative and not alternative." We decline to do so.

Finally, the ends of justice dictate that the Tiffanys should not retain the security. The Bankruptcy Court released the collateral. Were we to hold the Bank was not entitled to this property, the Tiffanys would receive a considerable windfall, at

---

**1.** This section provides:
  If separate actions are brought in the same county on the bond or note, and on the mortgage given to secure it, the plaintiff must elect which to prosecute. The other will be discontinued at the plaintiff's cost.

the expense of the Bank and the other bankruptcy proceeding creditors. For these reasons, we hold that the default judgment does not prevent a replevin action on the personal collateral. The doctrine of merger is inapplicable under these circumstances.

■ II. *Fees.* The Tiffanys challenge the award of fees granted the Bank, as receiver, and its attorney. Our standard of review on a court order awarding receiver and attorney compensation is abuse of discretion. *Herrick v. Davidson,* 164 Iowa 462, 465, 145 N.W. 907, 907–08 (1914); 75 C.J.S. *Receivers* § 388(a), at 1059 (1952). In our opinion, the court was well within its discretion in awarding compensation in both instances.

■ III. *Interest.* In the foreclosure action, Phoenix obtained a judgment in rem against the real estate, giving it the first priority. Phoenix urges that it should be entitled to interest on its entire $219,310.24 judgment during the period of redemption, rather than just on its $100 deficiency. It asserts that it is inequitable to deprive Phoenix of the use of its property for a full year without compensation.

Phoenix urges that we abandon the language of *Quaintance v. Mahaska County State Bank,* 201 Iowa 457, 205 N.W. 739 (1925), and allow its full interest claim. The trial court correctly relied upon our language in *Quaintance,* indicating that the interest accruing upon the judgment pending during the year of redemption was not collectable. 201 Iowa at 460, 205 N.W. at 741.

The Code specifically elaborates when interest is to be paid in the redemption context, Iowa Code §§ 628.11, 628.13, and who is entitled to possession. Iowa Code § 628.3. By not specifying that the mortgagee who purchases at sheriff's sale is also entitled to interest during the redemption period, we must assume the legislature intentionally left the mortgagee in the same position as all other purchasers (e.g. intended not to give them interest on what they have paid for the property).

We agree with the Bank's argument that when Phoenix bid at the sheriff's sale, its judgment became satisfied to the full extent of its bid. Therefore, all that remains of Phoenix's judgment is its $100 deficiency on which interest can accrue.

We need not discuss other matters in issue.

AFFIRMED ON BOTH APPEALS.

All Justices concur except CARTER, J., who concurs specially, and NEUMAN, J., who dissents in part and concurs in part.

CARTER, Justice (concurring specially).

I concur in the result but perhaps for somewhat different reasons than the majority. I believe our statement in *Tiffany I* that "defendants' merger defense is, at the present time, meritorious," 400 N.W.2d at 578, was only intended to place that issue back in the case for whatever role it deserved to play. The merger issue was not before this court for final decision in *Tiffany I.* It was up to the district court to first consider it on remand following the first appeal. I submit the result reached by the district court was correct.

I differ with the majority concerning its conclusions that, as a general proposition, the debt should survive the entry of the in rem judgment. As a general proposition, it should not. If a personal judgment is entered against the debtor, the debt survives as embodied in the judgment. Ordinarily, however, in a case where the court has personal jurisdiction over a debtor, the entry of a judgment which is only in rem cancels the debt and replaces it with a lien on the property against which the in rem judgment is entered. As we indicated in *Tiffany I,* ordinarily a judgment given for less than the full relief available will be interpreted as a denial of further relief. *Id.* Consequently, the bar aspects of the res judicata doctrine are implicated as well as the merger aspects.

There is, however, room for some flexibility in applying the res judicata doctrine. *See, e.g., Hunter v. City of Des Moines,* 300 N.W.2d 121, 126 (Iowa 1981). The

reasons the plaintiff should not be subjected to that result in the present case lie in (a) the paramount role the federal bankruptcy court played in the transaction, and (b) our statutory prohibition against joinder of the mortgage foreclosure action and the replevin action.

The orders of the bankruptcy court in the present case precluded any personal judgment against the debtor. In plaintiff's effort to achieve satisfaction from the collateral which the bankruptcy court made available, it had no choice but to seek in rem satisfaction against different property in separate actions. Under the circumstances, it would be inequitable to give preclusive effect to the judgment in either action as against the claims in the other action, except as necessary to preclude a double recovery.

NEUMAN, Justice (dissenting in part, concurring in part).

I concur in division II of the majority opinion but must depart from division I and what I believe to be my colleagues' misinterpretation of the operation and effect of the in rem default judgment obtained by Brenton Bank.

The majority relies on cases and authority establishing that an in rem judgment "is not sufficient to extinguish the entire indebtedness." *Strand v. Halverson*, 220 Iowa 1276, 1277, 264 N.W. 266, 267 (1935) (quoting 34 C.J.S. *Judgments* § 1183, at 768 (1924)); *see also Riverview State Bank v. Dreyer*, 188 Kan. 270, 273, 362 P.2d 55, 57–58 (1961); *Epperson v. Halliburton Co.*, 434 P.2d 877, 880 (Okla.1967); 50 C.J. S. *Judgments* § 910(c)(2), at 553 (1947).

What the majority overlooks is the distinction to be drawn between an action commenced solely in rem for the recovery of real property (as in *Strand* where notice was by publication thereby precluding in personam jurisdiction) and an action commenced in personam for the full amount of the indebtedness but waiving a personal judgment and the right to claim a deficiency. It is the latter case that confronts us here.

Rather than binding the bank to the relief claimed (and waived) in its petition and subsequently recovered by way of judgment, the majority would now allow further recovery against personal property securing the same indebtedness. The sole purpose of such further action would be to reduce the very deficiency the bank waived in the first instance. I would bind the bank by its previous election and reverse.