CLYDE LESLIE AND BILL LESLIE, PARTNERS, D/B/A LESLIE BROTHERS LUMBER CO., AND ROBERT W. MOORE AND M. W. MOORE, JR., D/B/A MOORE BROTHERS

*v.*

MARY W. GROSS, *et al.*, AND THE SUN LUMBER CO., *a corp.*

(No. 12643)

Submitted Sept. 20, 1967.          Decided Nov. 7, 1967.

*William W. Talbott, Ernest V. Morton, Jr.,* for appellants.

*William M. Kidd, John R. Haller,* for appellees.

BROWNING, JUDGE:

Plaintiffs instituted this civil action in the Circuit Court of Webster County against the Gross heirs and the Sun Lumber Company, sometimes hereinafter referred to as Sun, to require specific performance, that is, delivery of a deed from the Gross heirs to plaintiffs conveying certain lands in Webster, Randolph, and Upshur Counties, West Virginia, and to cancel a deed for such properties from the Gross heirs to Sun Lumber Company as a cloud on title. The pertinent facts are not substantially controverted and may be chronologically set forth as follows: On April 24, 1962, the Gross heirs in consideration of the sum of $1,000 granted to Sun Lumber Company an option to purchase the property in question for a total consideration of $10,000.00, the option agreement further providing that ''It is understood and agreed that the option herein granted shall be exercisable at any time within Thirty (30) days after the Federal tax lien presently existing against the property is removed. In no event, however, shall this option cease to exist for a period on One Hundred Twenty (120) days from the date hereof.'' Sun Lumber Company later notified the optionors on July 2, 1962, that Sun elected to purchase the property and ''stands ready to pay the residue of the purchase price upon tender of an apt and proper deed containing covenants of Special Warranty and free of all liens, taxes and encumbrances.''

Thereafter, on December 16, 1963, the property was advertised for sale on sealed bids by the Internal Revenue Service in order to satisfy a federal tax lien, which sale was conducted on January 16, 1964. Plaintiffs successfully bid the sum of $16,101.00 and, on February 13, 1964, received a certificate of sale. In the meantime plaintiffs had negotiated with the administrator and attorney for the Gross estate for the purchase of any rights of redemption which the Gross heirs might have, agreed to purchase such for the sum of $2,000.00 and caused a quitclaim deed, dated the 10th of February, 1964, to be circulated among the Gross

heirs for their signatures. On the same day a duplicate deed was written apparently by Mr. Eddy, attorney for the Gross heirs, which deed was signed and acknowledged only by Joseph W. Gross in his administrative and individual capacities which the plaintiffs retained in their possession. The complaint alleges that the deed circulated for signatures was in fact signed by all of the Gross heirs and their spouses and returned to Eddy, who determined that two signatures were not properly acknowledged, and the deed was returned for proper acknowledgment, which was done, and returned to the administrator of the estate for delivery to plaintiffs. However, prior to such delivery the Gross heirs executed a deed to the Sun Lumber Company for the property, dated March 3, 1964, appended to which was a declaration that the total consideration was $29,000.00, which is the deed sought to be cancelled as cloud on title.

Plaintiffs assert in their complaint that: the option to Sun was invalid and was abandoned by Sun; Sun depressed the bidding at the tax sale by informing other bidders of its option and of its intent to redeem; and Sun offered to plaintiffs the sum of $5,000.00 over and above the purchase price for an assignment of their certificate of sale, which offer was refused by letter dated February 27, 1964.

Defendants in their individual answers assert that the quitclaim deed to plaintiffs, dated February 10, 1964, was obtained by plaintiffs upon a misrepresentation of the total amount of taxes due; the deed was not executed or acknowledged by Mary W. Gross or Joan Gross; and such deed has been destroyed. Sun Lumber Company asserts a counterclaim against plaintiffs, alleging that on February 27, 1964, it tendered the entire purchase price plus 20% interest from the date of purchase, as provided by the Internal Revenue Code, Section 6336; Sun has the right to redeem as provided in the Internal Revenue Code; and asks that the partly executed copy

of the quitclaim deed, dated February 10, 1964, which plaintiffs have placed on record, be stricken and cancelled as a cloud upon its title. Sun admits that its option was not placed on record until after the tax sale.

Defendants moved the court for summary judgment on the pleadings, exhibits, and pertinent sections of the Internal Revenue Code and the answers to certain interrogatories propounded to two of the plaintiffs. Although not recited in the motion or notice there appears as one of the exhibits appended thereto the affidavit of Thomas Eddy, attorney for the estate of Joseph E. Gross, identifying the Sun Lumber Company letter of July 2, 1962, which he affirms was "duly acknowledged by him as a proper exercise" of the option to purchase. The answers to interrogatories directed to the Gross heirs were also submitted to the effect that while all but Mary W. Gross and Joan Gross signed the quitclaim deed of February 10th, none had any intention to repudiate the option agreement and none intended to be bound by his signature on the quitclaim deed unless all other hiers joined. On December 11, 1964, Sun moved to amend its motion for summary judgment and filed in support thereof the Eddy affidavit, to which there was no objection and it was ordered filed. It was also stipulated that Sun did in fact tender to one of the plaintiffs on February 27, 1964, the full amount necessary to redeem which offer was refused and that an agent and the attorney for Sun, though not directly representing Sun at that time, were present at the tax sale and the agent informed the plaintiffs of Sun's option and of its intention to redeem.

The defendants' motion for summary judgment was overruled on March 31, 1965, to permit the plaintiffs to take depositions concerning issues of fact, These depositions were taken and filed with the court and in the main merely expand upon the interrogatories theretofore in the record and are substantially in accord therewith. Thereafter, on February 15, 1966, the court, on

its own motion, rendered its opinion and sustained the motion for summary judgment in favor of the defendants. On March 3, 1966, plaintiffs moved for a reconsideration of that opinion, submitting in support thereof the affidavit of a person who was interested in bidding upon the property at the tax sale but declined to do so when informed of Sun's option; the affidavit of plaintiff Moore that he did not misinform the Gross heirs as to the amount of the tax liens; the affidavit of plaintiff Clyde Leslie that Sun had offered him $5,000.00 for an assignment of his certificate of sale; and the depositions of the Gross heirs and attorney for the Gross estate heretofore mentioned.

By order entered July 1, 1966, the court affirmed its previous decision granting summary judgment in favor of the defendants and denying the relief sought by plaintiffs, to which judgment this Court granted an appeal and supersedeas on January 23, 1967.

It is apparent from the recited facts that the primary issue for consideration upon this appeal is the validity of the option of April, 24, 1962, between Sun and the Gross heirs. The plaintiffs attack that option upon the grounds that it violates the rule against perpetuities, lacks consideration, and was never exercised but, on the contrary, a new contract was entered into between the Gross heirs and Sun which, in effect, meant that Sun had forfeited the $1,000.000 which was originally given to the Gross heirs as a consideration for the granting of the option. The plaintiffs contend further that since this was a proceeding in which the rules of equity prevail Sun is without clean hands, particularly because of the allegations and contentions of the plaintiffs to the effect that a representative of Sun appeared at the tax sale and, by informing the bidders that it had the privilege of redemption and that such equity of redemption would be exercised, discouraged prospective bidders and thereby depressed the bids.

Inasmuch as this is a proceeding for specific performance and therefore is controlled by equitable prin-

ciples we have carefully considered the actions of all of the parties in that light. Assuming that the allegations and contentions of the plaintiffs as to the statements made by an agent of Sun prior to the bidding were correct, if it had a valid option, then the representative spoke only the truth. Furthermore, assuming that the bidding was suppressed to the extent that the high bidder would not have been such without the statements made by the representative of Sun, the plaintiffs are not in a position to complain since it was the plaintiffs who were the successful bidders and derived any benefit accruing thereby. If anyone suffered from such representations by Sun it would have been the federal government, whose tax lien was much greater than the amount of the plaintiffs' bid, or the Gross heirs, neither of which has entered a protest.

It is not denied by the plaintiff Moore that he knew of the existence of the option, although he denies knowledge of the terms thereof, previous to its recordation after the tax sale. From other exhibits it appears that he was informed of its existence at least by July, 1962. Therefore, in considering the actions of the parties the plaintiffs are charged with actual notice as to the rights of Sun, assuming the option's validity, although the option was not recorded in either of the counties in which the land lay until after the tax sale. So, when the plaintiffs went to Pittsburgh on February 10, 1964, and caused Mr. Eddy, counsel for the Gross heirs, to prepare a "quitclaim" deed to be circulated among the Gross heirs and their respective spouses for execution they were proceeding with notice of the option. But, however that may be, the uncontroverted evidence is to the effect that the quitclaim deed of February 10, 1964, from the Gross heirs to the plaintiffs was not executed by all of the necessary parties to it. The elder Gross died intestate and his widow became vested with a dower interest and each of the children with his or her portion of the remainder. The record discloses that the widow, upon examination by coun-

sel for the plaintiffs as to her previously submitted interrogatory, was asked these questions and made these answers: "Q. Did you sign a deed to the plaintiffs, Mrs. Gross? A. To the plaintiff? Q. To Leslie Brothers. A. No, I did not. Q. You never signed it. Okay. Do you know of any such deed to the plaintiffs? A. No, I don't. Q. You never saw such a deed. A. No." Upon similar examination by counsel for the plaintiffs, Joan Gross, wife of Joseph W. Gross, was asked these questions and made these answers: "Q. Did you execute the deed, a copy of which is filed as Exhibit 'F', dated February 10, 1964, to the plaintiffs? I just showed you this copy of the deed. What is your answer? A. No. Q. You did not execute it. A. No." Of course since it was admitted that the original deed to which reference was made was destroyed before it came into the possession of the plaintiffs it was then and would be now impossible for the plaintiffs to refute that testimony. Thus, if we reached the question of the execution and delivery of the deed of February 10, 1964, from the Gross heirs to the plaintiffs the record unrefutedly shows that it was neither executed by all of the necessary parties nor delivered either directly to the plaintiffs or to Mr. Eddy, the attorney for the Gross heirs and who, plaintiffs maintain, was their escrow agent for that purpose. It is the view of this Court as it was of the trial court that the option of April 24, 1962, between the Gross heirs and Sun was accepted by the latter within the period stated therein and became valid as of that moment. It is true that the consideration for the purchase of the interests of the Gross heirs by Sun in the deed of March 3, 1964, is different from the consideration contained in the option. The total consideration as shown by that deed is $29,000.00 whereas the total consideration in the option was $10,000.00. However, it is the view of this Court that the plaintiffs are not in a position to attack the option upon that ground. They were not parties to the option and the attack thereon by them is in the nature

of being a collateral attack and they cannot be heard to complain that the Gross heirs received a substantially higher consideration in the deed than Sun could have probably required them to accept in a suit for specific performance of the terms of the option.

In the recent decision of this Court of *Aetna Casualty and Surety Co. v. Cameron Clay Products, Inc.* (1966), 151 W. Va. 269, 151 S. E. 2d 305, this Court discussed the effect of an executory contract growing out of an option prior to its acceptance by the optionee. In that case the Court discussed at some length the so-called "New York" or majority rule and the "Wisconsin" or minority rule. We did not accept either but based our decision upon whether the optionors still retained an insurable interest in the property under the facts of the case. Although there is a division of authority upon the question of whether the provisions of an option revert back to its date upon acceptance by the optionee by a kind of retroactive fiction or whether the option applies only from the date of the acceptance, there apparently is no conflict here or elsewhere as to the rule that when the optionee accepts the option within the time provided therein and notifies the optionor thereof equitable title passes to the property. We believe in the instant case that that occurred on July 2, 1962, when Sun accepted the option of the Gross heirs and formally informed them thereof. *Casto v. Cook,* 91 W. Va. 209, 112 S. E. 209; *Rease v. Kittle,* 56 W. Va. 269, 49 S. E. 150.

We find from this record no action by Sun that is inconsistent with the equitable rights which it had in the lands in question. We are of the view to affirm in toto the final order of the trial court dated July 1, 1966, wherein it held that the deed from Joseph W. Gross in his individual and administrative capacities of February 10, 1964, and of record in the office of the Clerk of the County Court of Webster County is a cloud upon the title of Sun and is void; that Sun is entitled to redeem from the plaintiffs the lien which they held as a

result of being the high bidder at the Internal Revenue Services' sale by paying to the plaintiffs the sum of $16,476.69 with interest thereon from the date of the decree; and that Joseph W. Gross and Thomas E. Eddy or either of them should return to the plaintiffs any moneys held by them as the result of the transactions of February 10, 1964.

*Affirmed.*