JOHN D. MOORE, *etc., et al.*

*v.*

SUN LUMBER CO.

(No. 14226)

Decided April 3, 1981

JOHN D. MOORE, *etc., et al.*

*v.*

JOSEPH W. GROSS, *etc., et al.*

(No. 14227)

Decided April 3, 1981.

736

*Talbott & Alsop and William W. Talbott* for appellants.

*Haller & Wagoner and John R. Haller, Jackson, Kelly, Holt & O'Farrell, Thomas E. Potter & Harvey A. Siler,* for appellees.

PER CURIAM:

We have before us two cases, Nos. 14226 and 14227, which have been consolidated on appeal. Case No. 14226, *Moore v. Sun Lumber Company,* is before this Court on a petition for appeal and supersedeas from an order of the Circuit Court of Webster County, entered on September 26, 1977, in Civil Action 76-C-41, which denied an action by appellants, John D. Moore and Robert W. Moore, to force the sale of a 414 acre tract of land to satisfy a default judgment obtained against the Gross heirs in Civil Action 1320, now styled Case No. 14227. Case No. 14227, *Moore, et al. v. Gross, et al.,* is before this Court on a petition for appeal and supersedeas from an order of the Circuit Court of Webster County, entered on September 12, 1977, in Civil Action 1320, which denied an action by appellants, John D. Moore, Robert W. Moore and Moore Brothers, to force the sale of certain property, once belonging to Joseph E. Gross, to satisfy creditor's claims against the Gross estate. The defendant below, Sun Lumber Company, (hereinafter Sun) filed counterclaims in both actions which were not decided by the circuit court and are not before us on this appeal.

This litigation has a long history beginning with the death of Joseph E. Gross in Pennsylvania in 1957. The first

stage of the litigation came to a conclusion with this Court's decision in *Leslie v. Gross*, 151 W.Va. 872, 157 S.E.2d 582 (1967). The facts arising prior to 1967 are fully and adequately set forth in that opinion and need not be repeated here at length. It will be sufficient to note the parties to that action and the nature of the issues litigated. *Leslie v. Gross* was commenced when, in 1964, Clyde Leslie and Bill Leslie, d/b/a Leslie Brothers Lumber Co., and Robert W. Moore and M. W. Moore, Jr., d/b/a Moore Brothers, instituted an action against Mary W. Gross, Joseph W. Gross, Joan Gross, Richard W. Gross, Mary G. Harrison, George C. Harrison (the Gross heirs), and Sun in the Circuit Court of Webster County. The plaintiffs in that case sought specific performance of a quitclaim deed granted to them by some of the Gross heirs and removal of a cloud on the plaintiffs' title to the land by the voiding of a subsequent deed issued to Sun by all the Gross heirs. Sun counterclaimed asking the court to void the quitclaim deed granted to Leslie and Moore as a cloud on Sun's title to the land and to permit Sun to redeem the land from Leslie and Moore's purchase of the land at a federal tax sale. The case was resolved adversely to the plaintiffs when this Court decided that Sun held good and valid title to the land and affirmed the order of the Circuit Court of Webster County which granted all of the relief sought by Sun.

Less than a year and a half after the decision in *Leslie v. Gross*, on February 14, 1969, John D. Moore was appointed ancillary administrator of the Gross estate by the Clerk of the then County Court of Webster County. The relationship between John D. Moore, Robert W. Moore, and M. W. Moore, Jr., does not affirmatively appear from the record in these cases although it is apparent that John D. Moore has replaced M. W. Moore, Jr., in the Moore Brothers' partnership. Shortly after his appointment as ancillary administrator, on August 20, 1969, John D. Moore instituted a suit in the Circuit Court of Webster County, naming the Gross heirs, Sun, and creditors of the Gross estate, as defendants. The suit, Civil Action 1320, sought to force the sale of the real estate which the complaint asserted was once owned by the Gross estate in West

Virginia to pay the unsatisfied claims of creditors of the estate. The suit was brought by John D. Moore in his capacity as ancillary administrator; and, along with Robert W. Moore, as assignees of the claims of creditors of the estate, and in their individual capacities, and as the Moore Brothers' partnership. The complainant alleged that the real property that had once belonged to the Gross estate was still the property of the estate and that Sun's redemption of the land from Leslie and Moore in 1967 merely gave them the status of a first lien creditor.

Sun filed an answer to the complaint in Civil Action 1320. Among other defenses raised in the answer, Sun asserted that the previous lawsuit, finally decided in *Leslie v. Gross,* was *res judicata* to the action here. The Gross heirs did not file an answer to the complaint and on October 2, 1969, a default judgment was entered against them. The order provided, in pertinent part:

> [T]he real estate of the estate of Joseph E. Gross as set forth in the pleadings is subject to the debts of decedent's estate as to the defendants who have not answered herein, and the defendants who have not answered herein are in default, and if the land as described in the pleadings in this case be hereinafter sold, the proceeds shall be applied to pay the debts of said estate if the same be ordered hereinafter sold by this Court.

The circuit court appointed a special commissioner to determine Sun's bona fide status as purchaser of the real estate, the disposition of that real estate subsequent to the death of Mr. Gross, and the rights of the present owners of the real estate. The commissioner filed his report on August 3, 1973. He found that although Sun was not a bona fide purchaser it was the present owner of the real estate and had taken it free and clear of the claims against the Gross estate. The appellants excepted to the findings of the special commissioner as did Sun. The circuit court held that Sun was the owner of the land and took it free from any claims against the Gross estate. The court also found that neither Joseph E. Gross, nor his estate, owned any real property in the State at the time the action was commenced

or at any time thereafter. The circuit court's decision was partially based on a finding that the question had been litigated and decided in *Leslie v. Gross.* On September 12, 1977, the Circuit Court of Webster County entered an order that affirmed the findings of the special commissioner and granted summary judgment to Sun. From that order plaintiffs filed a petition for appeal and supersedeas with this Court on May 8, 1978.

Sometime in 1976, the date not appearing specifically in the record, the Auditor of the State of West Virginia certified 414 acres of the real estate once owned by Mr. Gross in Webster County for sale by the Commissioner of Forfeited and Delinquent Lands for failure to pay taxes in 1948. The Commissioner filed a civil action in the Circuit Court of Webster County as provided for by law to effectuate the sale. Both Robert W. Moore and Sun were permitted to intervene in that action. It does not appear from the record whether John D. Moore intervened in that action although such intervention is alleged in the petition for appeal in Case No. 14226. The case was concluded by a circuit court order authorizing Sun to redeem the said 414 acre tract from the State. That order was not appealed.

After the order in the action brought by the Commissioner of Forfeited and Delinquent Lands, on October 10, 1976, John D. Moore as ancillary administrator, and Robert W. Moore in his individual capacity and as assignee of creditors of the Gross estate, filed Civil Action 76-C-41 in the Circuit Court of Webster County naming Sun as the defendant. This action sought to force the sale of the 414 acre tract that Sun had redeemed from the State to satisfy the claims of the creditors of the Gross estate and the default judgment that had been entered in Civil Action 1320, on October 2, 1969, against the Gross heirs. Sun answered, again raising *res judicata* among other defenses. In this case the circuit court found that Sun was the rightful owner of the 414 acre tract under the deed that had been held to be valid in *Leslie v. Gross* and granted summary judgment for Sun by an order entered on September 26, 1977. From that order of September 26, 1977,

the plaintiffs filed a petition for appeal and supersedeas with this Court on May 8, 1978.

Appellants make several assignments of error on the appeal of these two cases but we find that resolution of two of the assigned errors is determinative. Appellants assert that the circuit court erred in ruling: (1) that Sun had good and valid title to the contested land free and clear of all creditors' claims against the Gross estate; and (2) that the case of *Leslie v. Gross* had determined the issue. Appellee, Sun, argues that the circuit court's rulings on these points were correct and that the case of *Leslie v. Gross* is *res judicata* to the claims asserted on these appeals and in the cases below.

The term *"res judicata"* refers to a body of doctrine based on the general objective of judicial finality. *See Southern Pac. R.R. v. United States*, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355 (1897). The general doctrine embraces at least two separate and distinct concepts. *See generally* Restatement (Second) of Judgments § 45 (1973); Restatement of Judgments § 45 (1942). One aspect of *res judicata*, usually referred to as "bar and merger," prevents repetitious suits that involve the same cause of action. *See Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1955); *Pearson v. Dodd*, 221 S.E.2d 171 (W.Va. 1975). The law on this point is well settled in West Virginia:

> To justify the application of the doctrine of res judicata, . . . there must be a concurrence of four conditions, namely; (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons, and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made.

Syl., *Hannah v. Beasley*, 132 W.Va. 814, 53 S.E.2d 729 (1949); *See also Pearson, supra*. In the cases here, as in *Hannah*, there is not an identity of the thing sued for. In *Leslie v. Gross* the object of the suit was specific performance of the quitclaim deed and the removal of a cloud on the title of the owner of the land as to be determined by the suit. In the present cases the object is to force the sale of real estate in order to pay creditors' claims against the estate of Mr.

Gross. This aspect of *res judicata*, therefore, is not applicable to the cases presently before us.

The second aspect of *res judicata*, however, is applicable to the cases here considered. "Collateral estoppel" prevents relitigation of issues actually decided in a prior case. "When the causes of action are different, the former decision is conclusive only as to questions, rights and facts actually decided therein, and nothing more." Syl. pt. 2, *Hudson v. Iguano Land & Mining Co.*, 71 W.Va. 402, 76 S.E. 797 (1912). *See also Marguerite Coal Co. v. Meadow River Lumber Co.*, 98 W.Va. 698, 702, 127 S.E. 644 (1925), where we said: "[I]f an action be brought and the merits of the questions to be discussed between the parties, and a final judgment be obtained by either party, the parties are concluded and cannot again canvass the same question in another action."

Generally, three elements must be present in a case for collateral estoppel to apply: the issue decided in the prior adjudication must be the same as the one sought to be relitigated in the second action; the first action must have resulted in a final judgment on the merits; and the party against whom the estoppel is asserted must have been a party, or in privity to a party, in the prior action. *See Blonder-Tongue v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed 2d 788 (1971); *Federal Savings and Loan Insurance Corp. v. Hogan*, 476 F.2d 1182 (7th Cir. 1973); *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942); *Lane v. Williams*, 150 W.Va. 96, 144 S.E.2d 234 (1964). In the cases presently before us there can be no doubt that the prior action resulted in an adjudication on the merits of the case. *See Leslie v. Gross, supra.* It is also clear here that the parties against whom the estoppel is asserted were either parties to the prior action, i.e., Robert W. Moore and Moore Brothers, or in privity with such parties, i.e., John D. Moore. Hence, the latter two criteria for application of the collateral estoppel doctrine are present here.

Similarly, the dispositive issue in the cases presently before us was decided in *Leslie v. Gross* and the third criteria for collateral estoppel is, therefore, satisfied. Both Case No. 14226 and Case No. 14227 turn on the proposition

that the Gross heirs owned property in West Virginia that could be subjected to a forced sale. In order to maintain that proposition appellants must attack the validity of Sun's ownership of that property. In Case No. 14227 they do so by asserting that the deed issued to Sun, and upheld as valid in *Leslie v. Gross,* was invalid under *W. Va. Code,* 44-8-5, because Sun was not a bona fide purchaser. In order to support that contention appellants claim that Sun exercised bad faith in suppressing bidding at the tax sale of the property in 1964. The same claim was raised and rejected in *Leslie v. Gross.* In Case No. 14226 the appellants base their attack on the validity of Sun's ownership of the 414 acre tract on a more complex and involved argument relating to the effect of the sale of property to the State and subsequent redemption of such property; but it is no less a collateral attack upon the validity of Sun's title because of the complexity of the argument. Both parties agree that the determination of the validity of Sun's title to the land is dispositive of both cases. There can be no doubt that this issue was decided in *Leslie v. Gross.* There we said:

> We find from this record no action by Sun that is inconsistent with the equitable rights which it had in the lands in question. We are of the view to affirm in toto the final order of the trial court . . . wherein it held that the deed from Joseph W. Gross in his individual and administrative capacities of February 10, 1964 . . . is a cloud upon the title of Sun and is void.

151 W.Va. at 879. At that time we also held that equitable ownership of all the property owned by the Gross heirs in West Virginia passed to Sun when it accepted an option to purchase those properties on July 2, 1962; and that legal title to those properties was validly passed to Sun by a deed dated March 3, 1964. Hence, it cannot be said that the trial court, in the cases presently before us on appeal, erred in holding that *Leslie v. Gross* decided the issue that Sun had good and valid title to the contested land and that the Gross estate owned no land in West Virginia at the time the current actions were filed.

In *Leslie v. Gross*, at 878-879, we said: "It is the view of this Court that the plaintiffs are not in a position to attack the option [to purchase the land]. They were not parties to the option and the attack thereon by them is in the nature of being a collateral attack and they cannot be heard to complain . . . ." Once again plaintiffs seek to collaterally attack the conveyance to Sun of the Gross estate's real property located in West Virginia. Once again we note that such an attack will not be heard. We agree with the circuit judge's opinion that "the proper decisions have been made by the courts in all prior actions herein."

The trial court did not err and the orders of September 12, 1977, in Civil Action 1320, and September 26, 1977, in Civil Action 76-C-41, are hereby affirmed.

*Affirmed.*