**IN THE COURT OF APPEALS OF IOWA**

No. 15-0143
Filed November 25, 2015

**DUTRAC COMMUNITY CREDIT UNION,**
     Plaintiff-Appellant/Cross-Appellee,

**vs.**

**DOUGLAS P. HEFEL and**
**SHEILA K. HEFEL,**
     Defendants-Appellees/Cross-Appellants.
_____

     Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

     The credit union appeals the district court's ruling entering judgment against the Hefels on their guaranty of a loan, and the Hefels cross-appeal. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

     Peter D. Arling and McKenzie R. Hill of O'Connor & Thomas, P.C., Dubuque, for appellant.

     Steve P. Wandro and Michael R. Keller of Wandro & Associates, P.C., Des Moines, for appellees.

     Heard by Potterfield, P.J., and Doyle and Tabor, J.

**TABOR, Judge.**

We are confronted with the aftermath of two property-development foreclosures and the revocation of the personal guarantors' discharge in bankruptcy. The commercial lender appeals and the guarantors cross-appeal the amount of accrued interest on the deficiency, the amount of attorney fees, and the availability of prejudgment interest on the attorney fees. For the reasons discussed below, we affirm in part, reverse in part, and remand for more specific findings on the attorney-fee award.

## I. Background Facts and Proceedings

On October 9, 2008, Star Properties, LLC executed a commercial loan agreement and note in favor of DuTrac Community Credit Union and obtained financing exceeding $2 million. Star Properties used the loan to purchase and develop two residential subdivisions for commercial purposes. The first property, Waterford Estates, was located in Dubuque County, and the second, Riviera Belle Estates, was located in Jackson County. As security for its obligations, Star Properties granted mortgages to DuTrac on both properties. Douglas and Sheila Hefel, the sole members of Star Properties, signed the documents on behalf of the company, as president and vice president respectively. Also on October 9, the Hefels executed a personal guaranty as additional security for those transactions:

> [T]o induce DuTrac . . . to extend credit to Star Properties, L.L.C. ("Debtor"), the [Hefels] jointly and severally guarantee payment of and promise to pay . . . to [DuTrac] when due all [of Debtor's] loans, . . . notes, and . . . liabilities of every kind and description . . . ("the indebtedness") . . . including interest and charges, and . . . all costs, expenses, . . . and attorney fees at any

time paid or incurred in endeavoring to collect . . . the indebtedness, or to realize upon the Guaranty . . . .

The [Hefels] . . . agree that this shall be a continuing, absolute and unconditional guaranty and shall be in force and be binding upon [them] until the indebtedness is fully paid and this guaranty is revoked.

*Foreclosure.* After Star Properties defaulted, DuTrac filed separate foreclosure actions in 2010, suing the company personally and also seeking in rem judgments against the properties. In the same actions DuTrac sued the Hefels, alleging personal liability under the guaranty. On October 8, 2010, and immediately before entry of a foreclosure judgment in Jackson County, the Hefels filed a chapter 7 bankruptcy petition. The federal filing automatically stayed the proceedings against the Hefels in both counties. The Hefels' bankruptcy filing listed DuTrac as an unsecured creditor and stated the Hefels owed DuTrac $2,112,079 under their "personal guaranty of Star Properties debt." Also on October 8, DuTrac dismissed the Hefels without prejudice in the foreclosure cases, and the district court entered a judgment of foreclosure against Star Properties in Jackson County. On October 15, 2010, the district court entered a judgment against Star Properties in Dubuque County. Both judgments provided:

> 1. That [DuTrac] have and recover judgment against defendant Star Properties, LLC, and in rem against [the real estate] in the sum of $2,112,079 plus accrued interest and late charges of $88,388.44, plus interest accruing at the rate of 8.50% per annum from and after June 2, 2010, plus attorney fees in the amount of $2332.70, plus abstracting costs and expenses as determined by the court and for such other all costs hereafter accruing.
> . . . .
> 3. That special execution issue for sale of the premises . . . with interest accruing, for all court costs, including statutory attorneys' fees and costs and interest hereafter accruing.

In May 2011, DuTrac was the successful bidder at sheriff's sales for both properties.[1]  DuTrac received sheriff's deeds.  Meanwhile in federal court, the Hefels received a discharge in bankruptcy, and the bankruptcy estate paid DuTrac $34,325.04 in settlement of its claim based on the personal guaranty.

**The Hefels' Bankruptcy Fraud.**  In February 2012, DuTrac filed an adversary complaint in bankruptcy, seeking to revoke the Hefels' discharge on the grounds they committed fraud and fraudulently concealed property.  After trial, the bankruptcy court's 2013 order stated "[r]evocation of a discharge is an extraordinary remedy to be sparingly applied" and, nevertheless, invoked the "extraordinary remedy" and revoked the Hefels' discharge.  The bankruptcy court rejected the Hefels' alleged justifications:

> If DuTrac had not commenced this adversary proceeding, [the Hefels'] interests in several valuable trusts and multiple life insurance policies, and the transfer of the boat would not have been uncovered.  The circumstances as a whole indicate that [the Hefels] are unwilling to make full disclosure of their property interests.  DuTrac and Trustee went to great lengths to determine the extent of [the Hefels'] assets with [the Hefels] blocking them at every turn.  The Bankruptcy Code requires complete, truthful and reliable information from debtors . . . .  [The Hefels] have never fully complied with the duty to provide that information.

The Hefels appealed.  The federal district court reviewed the "substantial record" and upheld the revocation, ruling the order was "well supported."

**Litigation on the Hefels' Personal Guaranty.**  As a result of the revocation of the Hefels' discharge, their personal liability under the guaranty was not extinguished in bankruptcy.  It is undisputed the Hefels did not revoke the

---

[1] Waterford in Dubuque County sold for $891,000.  Riviera Belle in Jackson County sold for $662,000.

guaranty. In August 2013, DuTrac filed the petition in the instant case based on the Hefels' guaranty. DuTrac alleged the Hefels owed $1,312,152.21 and sought reasonable attorney fees as determined by the court. The Hefels answered and pleaded as an affirmative defense that DuTrac was requesting an unreasonable amount of attorney fees.

DuTrac filed its first motion for summary judgment In January 2014. Shortly before the summary judgment hearing, the Hefels filed a motion to continue, seeking time to conduct discovery. DuTrac resisted, and also stated it had erroneously omitted prejudgment interest on attorney fees and costs, "although the same was contractually agreed to be paid." DuTrac attached an amortization schedule showing the dates it paid attorney fees, the amounts paid, and interest from the dates of payment. After a hearing, the court denied summary judgment in March 2014, ruling whether DuTrac's attorney fees in the Hefels' initial bankruptcy action and the subsequent fraud action "are related to this action is a question of fact. Hefels are entitled to put forth evidence supporting their position."

The Hefels conducted discovery. In June 2014, DuTrac filed its second motion for summary judgment and an application for allowance of attorney fees with an updated amortization schedule. The Hefels filed a resistance, including their own amortization schedule that used a "constructive" date for the sheriff's sales. The Hefels claimed, under equitable principles, DuTrac was not entitled to

interest that accrued from the originally scheduled foreclosure sales (November 2010) to the later-occurring sales (May 2011).[2]

In July 2014, the summary judgment hearing commenced. DuTrac explained it was seeking judgment based on the Hefels' unlimited personal guaranty for the obligations of Star Properties. DuTrac pointed out, as owner of the judgment, it controls the judgment and the timing of the subsequent sheriff's sales and nothing shows DuTrac acted inappropriately in resetting the sale dates. DuTrac also claimed the Hefels cannot contest the dates because they waived their defenses in the guaranty. Finally, DuTrac claimed it was entitled to all the costs it expended in "pursuing, preserving, protecting, and liquidating the collateral or trying to obtain judgment. It's in the contract."

The Hefels countered "the fighting issue" was merger, and there was "no dispute [the Hefels owe] that deficiency judgment." Specifically, they alleged that once DuTrac received its judgment, "all of those contracts [note, mortgages, and guaranty] are done because [DuTrac] won." Therefore, the $2332.70 in each foreclosure judgment is the total attorney fees the Hefels owe DuTrac. In the alternative, the Hefels claimed "$430,000 is a lot of money to come after a $700,000 judgment" and noted their attorneys defended for about $125,000. At

---

[2] The Hefels also filed a supplemental resistance to summary judgment, claiming because DuTrac had recorded releases of the mortgages in March 2013, DuTrac's "claims should be dismissed in total." The district court disagreed, and the Hefels do not reassert this challenge on appeal. *See Peoples Bank & Trust Co. v. Lala*, 392 N.W.2d 179, 183-84 (Iowa Ct. App. 1986) ("[I]t is apparent the intention of the bank was to release the collateral not the debt."). Nevertheless, DuTrac was forced to defend in the district court.

the end of their argument, the Hefels dropped their request for a trial, agreeing the court could resolve the issues through summary judgment.

DuTrac replied the Hefels' fees were billed by a law firm that was newly involved at the time of the adversary claim and significant litigation had preceded the adversary claim. DuTrac also pointed out it had faced a heavy burden to successfully prove its fraud claims and obtain an "extraordinary remedy."

On November 3, 2014, the district court granted DuTrac's motion for summary judgment, holding the merger doctrine did not apply:

> [T]he doctrine of merger does not operate to overcome the continuing guaranty executed by the Hefels. The guaranty has not been revoked or extinguished and therefore is the basis for [DuTrac's] right to recovery herein. [The Hefels] were not parties to the note and mortgages. The note and mortgages were contracts between [DuTrac] and Debtor, Star Properties. Foreclosure judgments were obtained as to these contracts. [The Hefels'] liability arises from the guaranty, inclusive of attorney's fees, tabulated with interest at the contract rate.

After post-trial motions, the court awarded judgment in favor of DuTrac for the principal "amount of $726,448.61 plus accrued interest at the rate of 8.5 percent from and after June 14, 2014," and for attorney fees "in the amount of $332,546" with postjudgment interest on the attorney fees at the contract rate. The court rejected DuTrac's request for prejudgment interest on its attorney fees and assessed costs against the Hefels. This appeal by DuTrac and cross-appeal by the Hefels followed.

## II.    Scope and Standards of Review

We generally review a summary judgment ruling for the correction of errors of law. *See Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000).

The parties agree that we review the questions of merger and contract interpretation for legal error. A contract action is generally treated as one at law. *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 178 (Iowa 2010). Where the basic rights of the parties derive from the nonperformance of a contract, the remedy is monetary, and the damages are "full and certain," the action is considered at law. *Id.* at 179.

The parties agree we review de novo "the Hefels' arguments in equity for a reduction in the award on equitable grounds." *See* Iowa R. App. P. 6.907.

We review the reasonableness of the district court's award of attorney fees for an abuse of discretion. *City of Riverdale v. Diercks*, 806 N.W.2d 643, 652 (Iowa 2011). We will reverse only if the court rests its discretionary ruling on grounds that are clearly unreasonable or untenable. *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 732 (Iowa 2005).

## III. Merger Doctrine

We first address the merger doctrine raised in the Hefels' cross-appeal because if merger applies, the attorney-fee issues are moot. The Hefels contend: "When DuTrac reduced the various documents underlying the debt to judgment in the foreclosure actions, the terms of those documents merged into the resulting judgment, and DuTrac cannot now maintain an action for additional fees based on those documents." The Hefels claim DuTrac's present action "should be limited to pursuing the deficiency remaining after the sale of the foreclosed properties along with the interest on the same."

"The doctrine of merger is an aspect of res judicata which prevents relitigation of existing judgments." *Brenton State Bank v. Tiffany*, 440 N.W.2d 583, 585 (Iowa 1989) (*Tiffany II*). "Merger has the effect of issue preclusion. It serves to prevent the splitting of causes of action." *Id.* (citation omitted). But the doctrine of merger "is not as relentless and destructive as it might first appear. Merger does not discharge the debt for all purposes." *Id.* Additionally, the doctrine "is limited by concerns of justice" and "will not be carried any further than the ends of justice require. Although it is meant to prevent excessive litigation, its application to deprive a litigant [here, DuTrac] of a cause of action is limited by equitable concerns." *Id.* (citation omitted). Also, a creditor's [here DuTrac's] "right to join related causes of action does not bar [its] subsequent litigation of a distinct cause of action that was not joined." *See id.* at 587.

In support of the claim that their personal guaranty merged into DuTrac's foreclosure judgments against Star Properties, the Hefels cite *Farm Credit Bank v. Faught*, 492 N.W.2d 422 (Iowa 1992) (*Faught II*). But, to fully understand *Faught II*, we first turn to *Faught I*, 468 N.W.2d 793, 795 (Iowa 1991).

In *Faught I*, the bank filed foreclosure actions against the Faughts and a family corporation seeking personal judgments and foreclosure of farm mortgages. 468 N.W.2d at 794. The Faught family filed for bankruptcy, and the bankruptcy court lifted the bankruptcy stay "only as to the mortgaged real estate." *Id.* The bank elected to amend its petition, eliminating its request for personal judgments and inserting "a prayer for a judgment only against the realty." *Id.* The court "entered a decree in rem, foreclosing the mortgages against the

farmland." *Id.* After special execution and sheriff's sale, a deficiency remained, and the bank sought to levy a general execution on the Faught family's personal property. *Id.* Our supreme court ruled the bank was "precluded from any remedy relating to the deficiency because [it] elected to obtain an in rem judgment." *Id.* at 794-95 (citing *Schnuettgen v. Mathewson*, 222 N.W. 893, 896 (Iowa 1929) ("[W]e have never held that a mortgagee who has foreclosed [its] mortgage . . . may afterwards maintain the separate action upon his promissory note."). The *Faught I* court held that at the time of the bank's judgment in rem, "it was the only relief being sought. The petition for in personam judgment had, for whatever reason, been withdrawn. The effect was to resolve the dispute then existing between the parties." *Id.* at 795. Because the sale of the farms satisfied the judgment in rem, the bank "could not thereafter obtain a general execution to satisfy the deficiency." *Id.*

Several distinctions exist between *Faught I* and the instant case. In *Faught I*, the creditor originally sued the debtors personally on the notes and accompanying mortgages; nothing suggests the creditor also sued to recover on an unlimited continuing guaranty from one who was not a debtor-mortgagor. *See id.* The Hefels did not execute the note and mortgages, those documents were executed by debtor-mortgagor Star Properties. Second, the *Faught I* court's ruling was based on foreclosure statutes applicable when a creditor brings separate actions "in the same county on the bond or note, and on the mortgage given to secure it." *See id.* DuTrac sued Star Properties personally in two counties and in both counties DuTrac joined its actions on the note and

mortgage. Thus, DuTrac did not split its actions. Third, as admitted by the Hefels in their brief, DuTrac obtained personal judgments against debtor-mortgagor Star Properties, "thus allowing [DuTrac] to continue to seek a recovery on the deficiency."

While the appeal in *Faught I* was pending, the "bank brought a separate action to recover personal judgment" on the debtors' delinquent notes, claiming "it was legally and equitably entitled to personal judgment on the debtors' notes because the debtors' bankruptcy action had prevented it from pursuing this remedy along with the foreclosure." *Faught II*, 492 N.W.2d at 423. The *Faught II* court held the bank's second action was "barred by the doctrine of merger":

> [The bank] overreacted to the federal court's limited lifting of the bankruptcy stay. [The bank] doing so was not without consequences. It unmistakably signaled an intent to proceed against the real estate and not against the [debtors], personally, thereby freeing them to dismiss the bankruptcy action altogether. To permit the bank to now backtrack on that decision would tip the scales unfairly in the bank's favor. The [debtors] could have discharged their indebtedness in bankruptcy, thereby leaving the bank in the same position in which it now finds itself.

*Id.* at 424-25; *see In re Wade*, 354 B.R. 876, 883 (Bankr. N.D. Iowa 2006) (stating in *Faught II*, the bank was "attempting to seek a personal judgment and general execution on a note already included in a foreclosure action").

In *Faught II*, the bank alternatively argued the equities in its favor, as recognized for the bank in *Tiffany II*, should permit its second action to proceed. *Id.* at 425 (citing *Tiffany II*, 440 N.W.2d at 586-88) (stating if court would apply the merger doctrine and hold that bank was limited to its mortgage-foreclosure action as its sole remedy, court would be required to disregard the unambiguous

language in the security agreement stating bank's remedies against debtors are "cumulative and not alternative," and although bank is "entitled to only one satisfaction of its debt, it was not bound to join its replevin action with its foreclosure action, and concluding "real estate foreclosure judgment does not merge with the replevin remedy" where the debtors' "underlying debt still remains unpaid")). The *Faught II* court decided the bank, in claiming it was entitled to equitable relief because there had not been a multiplicity of suits, "misconstrues the whole notion of merger. The bank had its day in court. It chose the expedient route of taking the real estate in satisfaction of its indebtedness." *Id.*

The Hefels argue, based on *Faught II*, the documents forming the basis of DuTrac's foreclosure suit merged into the two judgments. The judgments are then the higher decree with the underlying personal guaranty inferior to the terms of the judgment. We agree as to "the documents forming the basis of DuTrac's foreclosure suit," but those "underlying documents" did not include the separate and distinct personal guaranties of the Hefels. The Star Properties' foreclosure judgments were based on personal jurisdiction against debtor-mortgagor Star Properties and are clearly distinguishable from the in rem judgment in the *Faught* cases that was the basis for the *Faught II* court's application of the merger doctrine.

Here, the only attorney fees expended and sought at the time of the foreclosure judgment were the fees leading up to the routine foreclosure based on "the mortgages and associated" note. The Hefels' personal guaranties contain separate and distinct promises to pay attorney fees. The Hefels have not

cited any cases applying the merger doctrine to a continuing guaranty executed by a guarantor who was not the debtor-mortgagor in the foreclosure action and who was not a party to the foreclosure action that resulted in a personal judgment against the debtor. Accordingly, we are not persuaded *Faught II* supports an application of the merger doctrine in the circumstances of this case.

The Hefels recognize the court in *Tiffany II* allowed the bank to pursue a subsequent action and also recognize the guaranty between the Hefels and DuTrac was in force. The Hefels therefore seek to distinguish *Tiffany II* by claiming DuTrac "here seeks not to recoup the deficiency in its initial judgment but rather to add hundreds of thousands of dollars to that deficiency by essentially adding an additional judgment for attorney fees—and those are primarily from fees and costs incurred in separate litigation in the bankruptcy court." According to the Hefels, DuTrac wants to expand "the limited exceptions to the doctrine of merger" by using this action "to entirely redefine the debt at issue."

Contrary to the Hefels' claim, we conclude DuTrac *is seeking* to "recoup the deficiency in its initial judgment" and *is not* asking us to "redefine the debt at issue." Star Properties' judgment debt, for which the ongoing continuing guaranty is a separate and distinct security, remains unpaid. *See City of Davenport v. Shewry Corp.*, 674 N.W.2d 79, 86 (Iowa 2004) (stating a guaranty is a contract by one party (the Hefels) to a second party (DuTrac) for the fulfillment of a promise of a third party (Star Properties)). DuTrac is now seeking relief from the Hefels, who are neither debtor nor mortgagor, but who are

separately liable for the debtor's unpaid judgments based on the guaranty. *See id.* (stating a guarantor's liability is "determined by reference to the obligations assumed by the guarantor in the guaranty, not by reference to the contract of the primary obligor"); *see also Aetna Life Ins. Co. v. Anderson*, 848 F.2d 104, 107 (8th Cir. 1988) (stating a guarantor's liability is primarily defined by the guaranty). As a result of their improper bankruptcy discharge, the Hefels' liability for Star Properties' debt under the separate guaranty had not been adjudicated and reduced to judgment. Thus, we agree with the district court's conclusion that the Hefels are not entitled to the benefits of merger.[3] *See Allison-Bristow Cmty. Sch. Dist. v. Iowa Civil Rights Comm'n*, 461 N.W.2d 456, 460 (Iowa 1990) ("[T]his case is not a situation of relitigation of an issue already decided. Neither do we believe that one who is not a party to the [initial] suit may claim the benefits of merger.").

Finally, an independent and separate basis for our rejection of the Hefels' merger challenge is found in the Hefels' waiver of such defenses in the guaranty; the Hefels agreed to "waive any and all acts or thing by [DuTrac] to be done to establish the liability of the undersigned in the premises, agree that no act or thing, except payment shall in any way affect or impair this guaranty." *See Anderson*, 848 F.2d at 107 (stating "in the guaranty a guarantor may waive defenses he otherwise would be entitled to raise" and ruling guarantor waived

---

[3] The Hefels' guaranty provided: "The liability hereunder shall in no way be affected or impaired by and [DuTrac] is hereby expressly authorized to make . . . any sale . . . settlement, release . . . modification or other disposition of the indebtedness."

defense that property mortgagee received as result of foreclosure sale had satisfied mortgagor's debt).

Having found the merger doctrine does not apply, we turn to the issues raised by DuTrac.

## IV.   Accrued Interest

DuTrac claims the district court erred as a matter of law in failing to award accrued interest (June 2, 2010 to June 14, 2014) in the amount of $245,398.02, plus interest accruing thereon at the rate of 8.5% per annum from and after June 14, 2014.  The Hefels agree the district court "left off this segment of interest in issuing its judgment and are unaware of a basis for the exclusion of the same in total."   But as a cross-appeal challenge, the Hefels contend DuTrac "is not entitled to interest that accrued during the time period from when the foreclosure sales were originally ordered (November 2010) to when they actually occurred (May 2011)."   The Hefels claim the "district court erred in failing to use its equitable powers to constructively treat the sales as if they had occurred on November 16, 2010."  *See* Iowa Code § 654.5 (2013) ("If the mortgagor does not file a demand for delay of sale, the sale shall be held promptly after entry of judgment.").

As DuTrac points out, nothing in the record shows DuTrac acted inequitably in postponing the sales.  We find persuasive the directive of our supreme court: "A judgment when entered is subject to the control of the party in whose favor it is.  He, his agent or attorney, may, in the use of the proper process of the law, enforce it, and no other person.  It is his judgment." *Ex Parte*

*Hampton*, 2 Greene 137, 139 (Iowa 1849). Thus, DuTrac owns and may unilaterally act on its judgment by dictating the process to use in enforcing the judgment. *See id.* During oral argument, the Hefels' attorney acknowledged there is no Iowa case requiring a judgment creditor to hold its foreclosure sale within a specific time after judgment entry. But, the Iowa Code does provide one guideline by allowing the owner of a foreclosure judgment a minimum of two years for execution. *See* Iowa Code § 615.1 (providing a two-year statute of limitations for execution on a judgment resulting from "the foreclosure of the real estate mortgage"). DuTrac's sale dates met its statutory obligation, and we find no basis for "inherent equitable relief."

As before, an independent and separate basis for our rejection of the Hefels' "constructive sales" challenge is found in the Hefels' waiver of such defenses in the guaranty. *See Anderson*, 848 F.2d at 107. Accordingly, we conclude the district court erred in failing to award $245,398.02, plus additional interest thereon. We remand for entry of a modified judgment in accordance with this opinion.

## V. The Court's Reduction in the Amount of Requested Attorney Fees

DuTrac contends the district court abused its discretion in reducing its request for attorney fees by $102,671.47—from $435,217.47 to $332,546. The lender is critical of the court's failure to offer specific reasons for slashing nearly one-quarter of the amount requested.

DuTrac bears the burden of showing the legal services at issue were reasonably necessary and the charges were reasonable in amount. *See*

*GreatAmerica Leasing*, 691 N.W.2d at 733. In fixing the attorney fee award, the court must consider the following matters: (1) the time spent; (2) the nature and extent of the services; (3) the amount of money involved; (4) the difficulty of handling and importance of issues; (5) the responsibility assumed; (6) the results obtained; (7) the standing of the attorneys in the profession; and (8) the customary changes for similar service. *Schaffer v. Frank Moyer Cnstr., Inc.*, 628 N.W.2d 11, 24 (Iowa 2001).

The district court found the hourly rate charged by DuTrac's attorneys was reasonable and "within the realm of acceptable rates within the Dubuque County legal community." The court was also impressed with the efforts by DuTrac's attorneys on complex legal tasks in the bankruptcy proceedings. The district court rejected the Hefels' claim they should not have to pay attorney fees for "unsuccessful legal attempts," holding "DuTrac had every right to pursue each and every avenue it could to try to uncover any and all hidden assets the Hefels chose to try to secrete from the bankruptcy court to avoid their liability under the guarantee."

In its ruling, the district court did voice two criticisms regarding DuTrac's fee request. First, the court agreed with the Hefels that "some of the actions post-entry of judgment relate to action taken on behalf of DuTrac relating to the ownership of their newly-acquired asset and not related to the lawsuit." Second, the court believed some of the work itemized by DuTrac was "duplicative" as to

"research that should have been accomplished at the inception of the case." DuTrac argues on appeal that those criticisms "pale in comparison" to the court's findings which support DuTrac's position.

It is true that DuTrac's attorneys were called to litigate a variety of issues as part of its foreclosure on two residential subdivisions. The lender rightly argues that had the Hefels not engaged in fraud, DuTrac would not have been forced to incur additional legal fees to investigate and to pursue a revocation of their bankruptcy discharge. The question is whether the court abused its discretion in awarding $332,546 in attorney fees rather than $435,217.47 as requested by DuTrac. Our concern on appeal stems from our mathematical computation based on the court's ruling:

> The month of the revocation trial alone, the firm utilized more than six members of the firm, to wit: four shareholders, one associate and one paralegal for a total of 242 hours at a charge of $42,354.00. In 2012, the firm charged $197,462. In 2013 the firm charged $120,381. DuTrac paid $14,703 for services in the present action.
> . . . .
> Judgment is hereby awarded in favor of DuTrac . . . in the amount of $332,546.00 [for attorney fees].

When we add together the 2012 fees ($197,462) and the 2013 fees ($120,381) and the fees for the present action ($14,703), those years equal the amount the court awarded—$332,546.00. Therefore, the time frame for the court's fee award appears to be two and one-half years. We affirm the district court's award of attorney fees for those years. But we are concerned the court may have inadvertently failed to award fees requested for legal work done in 2010 and

2011. The award of fees only for 2012 and 2013 appears inconsistent with the court's intention (expressed earlier in the ruling) to hold the Hefels liable for fees over three and one-half years:

> The time taken to preserve DuTrac's rights under the terms of the lending contracts was extensive in that it lasted over three and one-half years. During that time frame, there were many hours of investigation and legal research undertaken by various members of the firm. The most intricate of the legal tasks performed is the three-day trial in federal bankruptcy court to seek revocation of the [Hefels'] discharge. In fact, as DuTrac points out, the action itself is considered extraordinary . . . . The attorneys were also engaged in trial preparation, discovery, expert interviewing and retention, appeals (three to be exact), and review of voluminous documents that would not have otherwise been required had the [Hefels] been honest with the court.

Accordingly, we remand for clarification and a "fresh consideration" of whether the court intended to exclude (1) all of DuTrac's attorney fees for 2010, some of which pertain to the Hefels' initial bankruptcy action and (2) all of DuTrac's attorney fees for 2011, many of which relate to the foreclosure sales and to the ongoing bankruptcy issues. *See GreatAmerica Leasing*, 691 N.W.2d at 733-34. The court's ruling on remand should explain its reasons for awarding or declining to award all or some of DuTrac's 2010 and 2011 attorney fees in the context of the *Schaffer* factors and in the context of "the whole picture." *See* 628 N.W.2d at 24 (stating the court should use independent judgment with the benefit of hindsight to award a "total fee appropriate for handling the complete case"); *see also Dutcher v. Randall Foods*, 546 N.W.2d 889, 897 (Iowa 1996) (stating effective appellate review requires the district court to make findings of fact and to provide a "clear explanation of the reasons for the fee award"); *Lynch v. City of*

*Des Moines*, 464 N.W.2d 236, 240 (Iowa 1990) ("The court can arrive at this general conclusion without specifying with exactness each hour of time unnecessarily spent.").

**VI.    Prejudgment Interest on the Award of Attorney Fees Taxed as Costs**

The parties agree the contracts obligate the Hefels to pay DuTrac's attorney fees.  But DuTrac argues the district court erred in failing to rule the Hefels contractually agreed to pay "interest on the attorney fees from the date paid by DuTrac" and in failing to award such interest.  DuTrac cites to language in the commercial loan agreement:

> COLLECTION, EXPENSES AND ATTORNEYS' FEES. *To the extent permitted by law*, Borrower agrees to pay all expenses of collection, enforcement and protection of Lender's rights . . . . Expenses include . . . reasonable attorneys' fees . . . court costs and other legal expenses.  *These expenses will bear interest from the date of payment* until paid in full at the contract interest rate.

(Emphasis added.)  DuTrac also cites a provision in the mortgages:

> EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. *Except when prohibited by law*, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage . . . .  Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including . . . attorneys' fees, court costs, and other legal expenses . . . .  All such amounts . . . *will bear interest from the time of the advance* . . . as provided in the Evidence of Debt *and as permitted by law*.

(Emphasis added.)  Finally, DuTrac cites to the Hefels' guaranty:

> [T]he [Hefels] jointly and severally . . . promise to pay . . . to Bank when due all loans . . . notes, and all other debts . . . arising out of . . . credit . . . granted . . . by Bank to Debtor . . . (the "Indebtedness") . . . including interest and charges, and *to the extent not prohibited by law*, all costs, expenses, fees and attorney

fees *at any time paid or incurred* in endeavoring to collect . . . the Indebtedness, or to realize upon this Guaranty.

(Emphasis added). The Hefels counter the district court correctly denied DuTrac's request for prejudgment interest on the reasonable attorney fees awarded as costs because those fees were "unliquidated until awarded and were awarded as costs and not monetary damages." Existing case law supports the Hefels' position. *See Vasquez v. LeMars Mut. Ins. Co.*, 477 N.W.2d 404, 407 (Iowa 1991) ("'Liquidated' means the claim is certain and known.").

DuTrac cites *Schimmelpfennig v. Eagle National Assurance Corporation*, 641 N.W.2d 814 (Iowa 2002), claiming the court determined that a claim for attorney fees was "liquidated and complete" when the plaintiff paid the fees. We are not persuaded. The court's ruling was in the context of an insured suing for indemnification from a liability insurer that had breached its duty to defend. 641 N.W.2d at 815. The court did not discuss attorney fees awarded as costs under Iowa Code section 625.22, rather the court discussed attorney fees as an element of the plaintiff-insured's damages. *See id.* at 816; *see also FNBC Iowa, Inc. v. Jennessey Group, L.L.C.*, 759 N.W.2d 808, 810-11 (Iowa Ct. App. 2008) ("As a general rule an indemnitee is entitled to recover, as a part of the damages, reasonable attorney's fees."). Accordingly, *Schimmelpfennig* is not persuasive as to attorney fees taxed as costs under section 625.22.

Assuming the contracts provided that interest on attorney fees commenced from the time DuTrac paid each attorney-fee billing, we are required to read a contract's attorney-fees provision in tandem with the attorney fees

authorized by "section 625.22, the statutory provision for attorney fees provided for in contracts." *See Bankers Trust Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982); *see also Van Sloun*, 778 N.W.2d at 182 ("Iowa Code section 625.22 declares that when attorney fees are permitted under a contract provision, the court is permitted to tax a reasonable amount of those fees as a part of costs."). We recognize "the presumption that parties incorporate applicable statutes into their contracts." *Miller v. Marshall Cnty.*, 641 N.W.2d 742, 751 (Iowa 2002). Further, "the parties may not contract in defiance of a statute [regulating] the subject matter of their agreement." *Cornick v. Sw. Iowa Broad. Co.*, 107 N.W.2d 920, 921 (Iowa 1961). All the contracts herein recognize the presumption incorporating applicable statutes into the contracts, stating: (1) loan agreement— ("[t]o the extent permitted by law"); (2) mortgage—("[e]xcept when prohibited by law" and "as permitted by law"); and (3) guaranty—("to the extent not prohibited by law").

Turning to existing case law on the taxation of contractual attorney fees as costs, in a similar case where the bank sued the individual guarantors of a corporate debtor and then sought to recover contractual attorney fees, our supreme court stated: "[T]he right to attorney fees and costs is statutory and depends upon the statute in force at the termination of the proceedings." *See Woltz*, 326 N.W.2d at 278. The statute in force at the termination of the instant proceedings, Iowa Code section 625.22, provides: "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be

determined by the court." In its analysis of the identical statutory language, the *Woltz* court ruled:

> Since no party is entitled to costs until a judgment is recovered, Iowa Code section 625.22 (1981), a party [DuTrac] *has no vested right to* costs *at the commencement of the action. The right to costs accrues at the termination of the proceedings and this right exists solely by virtue of the statute.* The extent of the right can be governed only by the statute in existence at the time the right vests.

326 N.W.2d at 278 (emphasis added). As acknowledged by DuTrac during oral arguments, no Iowa court has ruled Iowa Code section 625.22 authorizes an award of prejudgment interest on the attorney fees taxed as costs after entry of judgment. This court's role is to apply "existing legal principles." *See* Iowa R. App. P. 6.1101(3). We therefore affirm the district court's ruling, for the reasons stated above, and hold DuTrac is not entitled to prejudgment interest on the court's award of reasonable attorney fees taxed as costs under section 625.22.

## VII. Conclusion

We affirm the district court's ruling finding the merger doctrine inapplicable, declining the Hefels' request to use a "constructive" sale date, and declining DuTrac's request for prejudgment interest on attorney fees taxed as costs under section 625.22. We reverse and remand for entry of a modified judgment ordering the Hefels to pay accrued interest in the amount of $245,398.02, plus interest accruing at the contract rate from and after June 14, 2014. We affirm the court's award of attorney fees for 2012 and the years thereafter in the amount of $332,546. We remand for the court to make specific findings of fact, based on the existing record, as to whether DuTrac has proven

its entitlement to none, some, or all of its attorney fees for 2010 and 2011. We do not retain jurisdiction.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**